553 So.2d 1034 (1989)
John Andre GRAVOIS, Jr., Mariner's Plaza, Inc., Belle Passe Towing Corporation and John G. Marine, Inc.
v.
NEW ENGLAND INSURANCE CO.
No. 88-CA-2234.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1989.
Rehearing Denied January 17, 1990.
*1035 Phillip A. Wittman, Stephen H. Kupperman, and Richard C. Stanley, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, for plaintiffs/appellants.
Roy C. Cheatwood, Edward D. Wegmann, and Paul L. Peyronnin, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant/appellee.
Before CIACCIO, WARD, and ARMSTRONG, JJ.
CIACCIO, Judge.
Plaintiffs appeal the trial court's dismissal of their suit on defendant's motion for summary judgment and exception of prescription. Defendant did not answer the appeal. We affirm in part, reverse in part and remand.
Plaintiffs, John Andre Gravois, Jr., and his companies, Mariner's Plaza, Inc., Belle Passe Towing Corporation and John G. Marine, Inc., filed suit against defendant, New England Insurance Company, the professional liability insurer of attorney Edward F. Wegmann. The policy issued by New England covers Wegmann for his liability on malpractice claims made against him for his own actions, and also for Wegmann's liability for acts of any former owner, partner, officer, director or stockholder employee of Wegmann's firm.
Plaintiffs allege that Wegmann and Gravois' attorney, Geoffrey Longenecker, were partners in the law firm of Wegmann and Longenecker during which time Longenecker devised a plan to divert Gravois' and his companies' assets to himself. Plaintiffs further allege that Wegmann improperly notarized a procuration that enabled Longenecker to borrow $4.5 million in Gravois' name, and thus aided Longenecker to implement his scheme. Although Gravois did not admit the genuineness of his signature on the procuration, he alleged that he had signed various documents in blank at Longenecker's request, that he never appeared before Wegmann, or the two attesting witnesses, and that Wegmann notarized the document in Gravois' absence.
In their petition for damages, plaintiffs seek recovery from New England on two grounds. First, they seek recovery from New England for Wegmann's virile share of liability as Longenecker's partner for the wrongful acts committed by Longenecker while Longenecker was a practicing partner in the alleged law firm of Wegmann and Longenecker. Second, plaintiffs seek recovery on claims made directly *1036 against Wegmann for Wegmann's improper notarization of the procuration used by Longenecker to defraud them.
In response to plaintiffs' petition, New England filed a motion for summary judgment, arguing that a partnership did not exist between Wegmann and Longenecker, and also an exception of prescription, contending that any claims plaintiffs may have had against Wegmann directly had prescribed. The trial court partially granted New England's motion for summary judgment and exception of prescription. Plaintiffs appealed.
Gravois employed Longenecker as the attorney for himself and his companies, Belle Passe Towing and John G. Marine, Inc., in the late 1970's. As their attorney, Longenecker rendered legal services to Gravois and his companies and soon thereafter started acting as their financial advisor. In 1981, while Longenecker was sharing office space with Wegmann in the First N.B.C. Building, he advised Gravois that he should use his cash assets to make certain financial investments. Longenecker informed Gravois that the investments could be legally arranged so that Gravois, Belle Passe Towing and John G. Marine, Inc. would not be personally liable for any amount in excess of their initial cash contributions. Longenecker then incorporated Mariner's Plaza, Inc. to serve as the legal vehicle through which Gravois, Belle Passe Towing and John G. Marine, Inc. would make their investments. In the initial report filed with the Secretary of State's Office, Longenecker named himself as Mariner's Plaza's incorporator, sole director, sole officer and sole agent for service of process. Longenecker did not provide Gravois or his companies with the original stock certificates representing their shares of Mariner's Plaza, Inc.
In reliance upon Longenecker's advice, plaintiffs entered into several contracts and business ventures, including investments involving undeveloped real estate, office buildings and thoroughbred horses. Plaintiffs also relinquished to Longenecker all personal, business and corporate records.
In connection with the investments, Longenecker advised Gravois to sign several documents which he said were legally necessary in order to facilitate the investments. One of the documents which Gravois claims to have signed in blank was a procuration authorizing Longenecker to endorse and guarantee, in Gravois' name, a loan to Mariner's Plaza, Inc. in the amount of $4.5 million. Longenecker allegedly completed the procuration, dated June 30, 1982, had Wegmann notarize it and then used it, without Gravois' knowledge or consent, to obtain a $4.3 million loan from Central Savings & Loan Association on July 2, 1982. Longenecker allegedly used part of the loan proceeds to buy from Central Savings a piece of property located in St. Tammany Parish. The remainder of the loaned funds was to be used in the development of the property. The initial purchase of the property was made in Mariner's Plaza, Inc.'s name, but Longenecker later transferred the property to himself, without the knowledge or consent of Gravois.
In mid-1983, Central Savings informed Longenecker that the July 2, 1982 loan had to be restructured because it had exceeded lending limitations for a single borrower in violation of federal banking regulations. Central Savings requested that Gravois sign personally as a guarantor on the $4.3 million promissory note of Mariner's Plaza, Inc. Gravois complied with the request to restructure the loan and personally guaranteed the note on June 3, 1983. Shortly thereafter, Gravois began receiving phone calls and written correspondence from Central Savings and other lending institutions requesting past due payments on several loans. Alarmed over what he thought were obligations on which he was not personally liable, Gravois contacted his accountant, John Guidry. Gravois and Guidry met with the banks on different occasions to learn that Gravois was a personal guarantor on several loans. Meanwhile, Guidry attempted to gather the various documents in order to determine the extent of Gravois' indebtedness.
In early September 1983, armed with a synopsis of the financial documents, Guidry *1037 notified Gravois that he had a legal problem, not an accounting one, and told him it would be wise to obtain an attorney. Gravois contacted an attorney from Thibodeaux in September 1983. That attorney then retained counsel from New Orleans to assist with the case. Gravois, his attorneys and Guidry met with Longenecker on several occasions in an effort to ascertain the extent of Gravois' liability in order to avoid bankruptcy and to determine if any of the investments were salvageable. Through the course of these meetings, Longenecker was uncooperative, refusing to let them see documents, records or corporate books, but at one meeting, in September, 1984, he informed them that Gravois could be personally liable for at least $400,000 of the debts.
On the advice of their new counsel, on October 12 and 13, 1983, a shareholders' meeting of Mariner's Plaza, Inc. and a board of directors meeting of John G. Marine and Belle Passe Towing were held for the sole purpose of removing Longenecker from the board and as an officer of the corporations. Also, on October 17, 1983 Gravois executed documents revoking all of Longenecker's powers of attorney. Although Gravois initially filed suit against Longenecker on October 9, 1984, he did not file suit against New England for the alleged acts of Wegmann until March 15, 1985.
In his reasons for judgment, the trial judge stated in part:
The issues to be considered are:
a). Did a partnership exist between Wegmann and Longenecker?
b). Did a partnership by estoppel exist?
c). Did Wegmann's act make him liable to plaintiff?
d). Did damage flow from this act?
e). Was the cause prescribed at the time suit was filed?
The Court holds that no partnership existed between Wegmann and Longenecker and will grant the Summary Judgment on this issue.
The Court holds that there exist sufficient factual and legal dispute as to the acts, and damages flowing from the acts of Mr. Wegmann, and the Court will deny Summary Judgment on these issues.
The act of Mr. Wegmann would be governed by a prescription of one year. The plaintiff, Mr. Gravois knew of the act of Mr. Wegmann in June of 1983 when he signed the endorsement of the note for $4,800,000.00, and again by October 1983, when he revoked the procuration to Longenecker.
The suit was filed against New England on March 15, 1985.
The Court will maintain the Exception of Prescription.
* * * * * *
The plaintiffs urge on appeal that a genuine issue of material fact does exist as to whether Longenecker and Wegmann were law partners at the time the alleged wrongful acts were committed, and therefore, summary judgment was improper. Alternatively, they contend that should we conclude that the trial court was correct in finding that Wegmann and Longenecker were, in fact, not partners, New England is nevertheless liable due to the existence of a partnership under the theory of partnership by estoppel.
In support of its motion for summary judgment, New England offered sworn affidavits from Wegmann and Longenecker. Wegmann states in his affidavit that he and Longenecker were never, at any time, law partners. He states that they agreed to share office space and office expenses but not profits and losses. Wegmann further states that, on isolated occasions, Longenecker referred cases to him or requested that he handle a case and, in those rare instances, the two would share the fee or Longenecker would pay him the fee for handling the matter. Wegmann swears that never did he represent Gravois nor any of his corporations, nor did he derive any fees from Longenecker's representation of Gravois. In his affidavit, Longenecker also swears that he and Wegmann were never law partners but simply agreed to share space and office expenses. Longenecker states that while he shared *1038 office space with Wegmann, he entered into a partnership with attorney John Musser and that they formed the firm Longenecker and Musser which associated with it attorneys James Smith and Terry McCall. Longenecker also states that he never represented to anyone that Wegmann was his law partner.
Plaintiffs presented a statement of contested facts and attached several exhibits to its memorandum in opposition to defendant's motion for summary judgment. The attached exhibits showed that Wegmann and Longenecker's office stationery bore the letterhead "Wegmann and Longenecker", the office door was marked "Wegmann and Longenecker", and the telephone directories for the years 1981 and 1982 list the law firm of "Wegmann and Longenecker." Likewise, the Martindale-Hubbell legal directory for the years 1981, 1982 and 1983 identifies Edward F. Wegmann and Geoffrey H. Longenecker as members of the firm. Wegmann and Longenecker also obtained professional malpractice insurance from October 1981 through October 1983 from policies issued to the firm "Wegmann and Longenecker" by National Union Fire Insurance Company. The 1982-1983 policy includes a renewal application dated August 9, 1982 which names "Wegmann and Longenecker" on the line designated for "name of firm." The renewal application lists "Wegmann and Longenecker" as the "applicant" and indicates that the entity is a "partnership." Wegmann signed the application.
A partnership is defined in the Louisiana Civil Code as a juridical person, distinct from its partners, created by contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. LSA C.C. art. 2801. To be considered a partnership, a business relationship must meet the following established criteria: (1) the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them; (2) all parties must share in the losses as well as the profits of the venture; and (3) the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. Marie v. Savoie, 470 So.2d 367 (La. App. 5th Cir.1985), citing Glover v. Sowada, 457 So.2d 101 (La.App. 5th Cir.1984), writ denied 461 So.2d 316 (1984); Sas Jaworsky v. LeBlanc, 239 So.2d 176 (La.App. 3rd Cir.1970), writ denied, 256 La. 911, 240 So.2d 373 (1970).
It is well settled that the party seeking summary judgment has the burden of showing the complete absence of a genuine issue of fact. Any doubt regarding the existence of a disputed factual issue is resolved against New England as the mover for summary judgment. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App.3rd Cir.1985). Despite the presence of disputed facts, summary judgment as a matter of law will be granted if the disputed issues of fact are so patently insubstantial as to present no genuine issues. Merely formal allegations without substance will not preclude summary judgment. Equipment, Inc. v. Anderson Petroleum, Inc., id.
The affidavits accompanying defendant's motion for summary judgment provide convincing proof that Wegmann and Longenecker never contracted, agreed or intended to form a partnership. Although plaintiffs' contradictory evidence demonstrated that Wegmann and Longenecker's employment relationship had the appearance of a partnership, the evidence fails to raise a specific factual issue relevant to the criteria necessary for the creation of a partnership. In the absence of other supporting evidence to refute the Wegmann & Longenecker affidavits, such as a partnership income tax return or a partnership financial statement, the trial court correctly concluded, that as a matter of law, Wegmann and Longenecker were not partners.
Regarding plaintiffs' contention that Wegmann and Longenecker created a partnership by estoppel by their outward manifestations of a partnership, the evidence fails to support this claim.
*1039 A partnership may be found to exist even though there is no intent to form a partnership in those instances in which a person holds himself out as a partner to the justified detrimental reliance of a third party. Butler v. Atwood, 420 So.2d 742 (La. App. 4th Cir.1982); Pelican Plumbing Supply, Inc. v. Dixie Plumbing & Heating, 225 So.2d 239 (La.App. 4th Cir.1969). It is apparent however, that even in those cases, the intent to share profits and losses is an indispensable element. Butler v. Atwood, supra.
The record in this matter is devoid of any evidence which demonstrates that Gravois relied to his detriment on the existence of a partnership between Longenecker and Wegmann. If anything, those portions of Gravois' deposition in the record indicate the opposite. Gravois' testimony reveals that he had no dealings with Wegmann in connection with Longenecker's representation of him and that he had no expectation of such. Gravois admits that the only time he ever had contact with Wegmann was when he went with his New Orleans attorney to Longenecker's office to get the corporate records and his attorney introduced him to Wegmann. Furthermore, the record is devoid of any evidence that Wegmann and Longenecker shared profits and losses. Under these circumstances, summary judgment was proper.
The last issue before us is whether plaintiffs' claims against Wegmann have prescribed.
On appeal, plaintiffs assert that their claims are based not only on fraud, malpractice and conversion, but also upon a breach of fiduciary duty, and therefore, a ten year prescriptive period for personal actions under LSA-C.C. art. 3499 is applicable. We disagree.
It is well established that an action for legal malpractice normally states a cause of action in tort and is subject to a one year prescriptive period. L.S.A. C.C. art. 3492. It is only when an attorney expressly warrants a specific result, or agrees to perform certain work and does nothing, that the cause of action is in contract and subject to the ten year prescriptive period as provided in L.S.A. C.C. art. 3499. Gifford v. New England Reinsurance Corporation, 488 So.2d 736 (La.App. 2d Cir.1986).
In the instant case, the evidence reflects that Wegmann notarized the procuration used by Longenecker to obtain the loan from Central Savings. Wegmann admitted in his deposition that he notarized the procuration but could not recall whether Gravois was present when he did so. The record contains no other evidence that Wegmann performed any legal services for the plaintiffs in which he guaranteed a result or that he performed any legal service whatsoever except for the notarization of the procuration. In light of these factors, any claims plaintiffs may have against Wegmann for legal malpractice are governed by a one year prescriptive period.
Plaintiffs, in opposition to defendant's exception of prescription, invoke the doctrine of "contra non valentum agere nulla currit prescriptio" in support of their position that prescription was suspended against them until September 1984. Plaintiffs contend that because Longenecker concealed his fraudulent conduct, refused to turn over corporate records and continued to assure them that Gravois' interests were protected, prescription was interrupted until September 1984 when Longenecker finally revealed that Gravois was liable on the loan from Central Savings. Arguing to the contrary, New England asserts that Gravois learned that Longenecker had used the notarized procuration to obtain the $4.3 million dollar loan from Central Savings when he was called upon to personally guarantee the promissory note at the restructuring of the loan on June 3, 1983, and thus, the prescriptive period began to run on this date.
Gravois testified at his deposition that in June of 1983, Longenecker advised him to sign several documents that Longenecker brought to him in Golden Meadow and he did so. He testified that he had no recollection at all of when he executed the June 1983 promissory note needed for the restructuring of the Central Savings loan. *1040 The record further reflects that when the various lending institutions started calling Gravois for payments due on loans in mid-1983 he contacted his accountant, Mr. Guidry. Both Gravois and Guidry then met with the officers from the institutions at several times and they learned that Gravois was liable on several short term obligations. After Guidry prepared and completed the synopsis of the financial statements and documents, he told Gravois that he had a legal problem and should obtain an attorney. Gravois then retained the services of the attorney in Thibodeaux. It was through him that Gravois claims to have learned that Longenecker had used the procuration to obtain the loan from Central Savings. The Thibodeaux attorney in turn contacted the attorney in New Orleans. Gravois, Guidry and the two attorneys met with Longenecker several times and requested the corporate records. On October 12 and 13, 1983, after Longenecker refused to turn over the corporate records despite several requests, Gravois, on the advice of his attorneys, removed Longenecker from his positions as an officer and director of his corporations and revoked Longenecker's powers of attorney. Until this time, Gravois claims that he was still represented by Longenecker. All of these facts indicate that plaintiffs, as of October 17, 1983, had actual knowledge of Longenecker's conduct and possible malpractice although they may have lacked knowledge as to the full extent of their losses.
Prescription for delictual actions begins to run from the day the injury or damage is sustained. L.S.A. C.C. art. 3492. When a party has enough notice to excite attention and put him on guard and to call for inquiry, he has sufficient knowledge to start the running of prescription. Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970).
In Jordan v. Employee Transfer Corporation, 509 So.2d 420 (La.1987), the Louisiana Supreme Court further delineated the rules regulating the running of prescription. The court stated:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. id. at 423.
Following these guidelines, we find that prescription did not begin to run against Gravois and his companies prior to October 17, 1983, the date on which Longenecker was removed as a corporate officer and his powers of attorney revoked. By that date Gravois and his attorneys had knowledge of the existence of the procuration, knew that Gravois had placed his signature on the loan restructuring instruments, and had sufficient notice of the potential loss to have started the running of prescription. Longenecker's delaying tactics, under these circumstances, were not sufficient to further suspend the running of prescription under the theory of "contra non valentum".
On appeal, plaintiffs strongly urge that Wegmann and Longenecker are joint tortfeasors, and therefore, solidarily liable, arguing that without Wegmann's notarization of the procuration, Longenecker could not have acquired the loan from Central Savings to purchase the real estate in St. Tammany Parish. Thus, they assert their filing of suit against Longenecker on October 9, 1984, interrupted prescription as to Wegmann.
Although the allegation of solidary liability was urged in plaintiffs' memorandum in opposition to the motion for summary judgment and exception of prescription the issue of whether Longenecker and Wegmann were joint tortfeasors was not addressed by the trial judge in rendering judgment. He did find that a factual and legal dispute remained as to whether any damages flowed from Wegmann's conduct and denied summary judgment. The allegations of malpractice against Wegmann, as a notary public, may be a basis for Wegmann's *1041 improper notarization of the procuration. However, there would be no solidary liability if the court found that the acts of Wegmann and Longenecker were independent acts producing damages that were not foreseeable or dependent on each other. Summers Brothers, Inc. v. Brewer, 420 So.2d 197 (La.App. 1st Cir.1982).
If Wegmann and Longenecker were joint tortfeasors, then the filing of suit against Longenecker on October 9, 1984 would have interrupted prescription as to Wegmann, LSA C.C. art. 1799, as prescription with regard to Wegmann had not run as of that date. Absent a finding that Wegmann and Longenecker were not joint tortfeasors, we find that the trial judge erred in maintaining the exception of prescription.
New England did not appeal from the partial denial of the summary judgment, wherein the trial court found the existence of sufficient factual and legal disputes as to the acts and damages flowing from the acts of Wegmann so as to preclude summary judgment on those issues. Because no appeal was taken by New England we are unable to consider the correctness of that ruling. We express no opinion as to whether Wegmann's actions amounted to malpractice or whether any damages resulted from Wegmann's notarization of the procuration, or whether Wegmann and Longenecker are solidarity liable as joint tortfeasors, as those issues are not properly before us.
For the foregoing reasons, the judgment of the district court is affirmed insofar as it granted partial summary judgment. It is reversed insofar as it maintained defendant's exception of prescription. We remand the case to the trial court for proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WARD, J., concurs in part; dissents in part.
WARD, Judge, concurring in part; dissenting in part.
I concur in the majority opinion to the extent that it remands this case for a finding on whether Wegmann and Longnecker are solidarily liable as joint tortfeasors. Although I recognize that the determination as to whether Wegmann and Longnecker are joint tortfeasors is the threshold issue in this case, I nevertheless believe the Trial Judge erred in granting summary judgment on the partnership issue. At least, in my view, given the evidence on the motion for summary judgment, the issue seems inappropriate for summary resolution. The affidavits and evidence presented either to support or oppose the motion for summary judgment put forth many genuine issues of material fact which, in my opinion, should be decided by the ultimate trier of fact. While the majority considers the absence of certain evidence such as a partnership income tax return or a partnership financial statement of some importance, I believe that the absence of such evidence merely goes to the weight of the other evidence and whether the other evidence is sufficient to find the existence of a partnership in a trial on the merits.
Hence, not only would I remand this matter for a finding on whether Wegmann and Longenecker are solidarily liable as joint tortfeasors but I would also remand for a factual finding on the existence of a partnership.