FOIL, Judge.
Plaintiff, buyer of a thoroughbred horse, appeals from a judgment denying his action in redhibition to rescind the sale and granting the seller’s reconventional demand. We affirm.
FACTS
Robert E. Coleman is in the thoroughbred race horse business and owns Coleman Farms in Folsom, Louisiana. He previously purchased horses valued at roughly $2,000,000.00 from Clay Neel at Nekaala Farms in Oklahoma. These gentlemen had an informal buy-sell arrangement. They never put the sales in writing, but instead dealt on a “handshake” basis.
In 1983, Coleman sought to purchase a son of the horse “In Reality” for breeding purposes. Neel acquired “Greek Reality,” an “In Reality” stallion, and offered to sell him to Coleman for $200,000.00. The horse was six years old and raced for four years. Neel informed Coleman that the horse had never been bred before. The horse also had a bilateral laryngeal hemiplegia which caused problems with breathing. Neel told Coleman that the horse’s throat problem could be corrected by surgery. The parties dispute whether Neel advised Coleman about the throat condition before or after the sale. After Coleman examined the horse twice at Nekaala Farms, he purchased Greek Reality from Neel in October of 1983 for $150,000.00. Neel advised Coleman to buy fertility insurance covering the horse because its semen had never been collected and evaluated. Coleman purchased insurance on the horse, but unknown to him, fertility was not covered under the policy.
Greek Reality took a standard health test when he arrived at Coleman Farms, but he was not tested for fertility. James Fowler, who later became the manager of Coleman Farms, believed that Greek Reality was covered by fertility insurance. He did not test the horse for breeding soundness because he assumed that Greek Reality had to pass a fertility test to be covered by insurance.
Fowler scheduled Greek Reality to stand at stud for a book of 35 mares when breeding season began in 1984. Starting on January 31, Greek Reality covered four mares on seven occasions. Three of the mares came back into heat and were later settled by other stallions. After breeding on February 21, Greek Reality settled the mare “Dynamic Deb” who foaled the filly “Face Reality” in the spring of 1985.
Fowler became suspicious when Greek Reality only settled one mare off of the first breedings and the other three mares came into foal after cover with other studs. For ten days in early March, he collected semen from Greek Reality daily and examined it under a microscope. He observed a handful of sperm the first time, which appeared dead. Then he saw fewer and fewer until finally, he saw none. One cubic centimeter of semen usually contains 250,-000,000 to 500,000,000 sperm.
*1280 On April 13, 1984, Fowler took Greek Reality to the L.S.U. School of Veterinary Medicine for a breeding soundness examination. Dr. Mushtaq Memon, head of the theriogenology (animal reproduction) department, conducted the examination. He collected the semen twice, one hour apart, and found a few immotile sperm. Dr. Memon concluded that Greek Reality was not a sound breeder at that time. The examination also revealed that Greek Reality already had surgery on his throat.
Coleman filed this suit against Neel demanding rescission of the sale and return of the purchase price. Coleman seeks to avoid the sale on the grounds of two redhi-bitory vices: (1) he purchased the horse for breeding purposes and the horse was later diagnosed as an unsound breeder; and (2) the horse has the absolute vice of “defect of wind.”
Neel answered the petition and claimed that the breeding defect did not exist at the time of sale. He also asserted that the breathing condition pertains to the horse’s soundness to race, which was not a consideration of the sale.
In addition to his answer, Neel filed a reconventional demand against Coleman for $105,000.00. The facts show that Neel and Coleman together bought the stallion “Smoking Gun.” Coleman owned 75% of the horse and Neel owned the remaining 25%. They both signed a promissory note for the purchase price of $400,000.00 payable to Louisiana National Bank one year from the date of the loan. Coleman later paid the principal and interest in full when the note became due. The parties dispute why Neel did not pay his share of the note. After he purchased Greek Reality, Coleman purchased two mares and a filly from Neel, who agreed to accept a post-dated check in payment of the purchase price of $105,-000.00. When Coleman paid in full the bank debt on Smoking Gun, he stopped payment on the check he wrote to Neel, claiming he was entitled to off-set that amount against the amount Neel owed on the promissory note. In his reconventional demand, Neel asserts that plaintiff stopped payment on the check to secure the return of a portion of the purchase price of Greek Reality. Neel claims that he had no obligation on the promissory note and that Coleman owes him $105,000.00. Coleman does not deny that the money is due on the $105,000.00 horse transaction. Rather, he pleads the affirmative defense of set-off against Neel’s indebtedness on the Louisiana National Bank note.
The trial judge found that Coleman failed to carry his burden of proving a defect existed in Greek Reality’s breeding ability at the time of the sale. For that reason, the trial judge denied Coleman’s action in redhibition. The judge’s written reasons for judgment did not mention Coleman’s allegation of the defect of wind. The trial judge denied Coleman’s defense of set-off against Neel’s reconventional demand and awarded judgment to Neel for $105,000.00. Coleman appealed.
The issues on appeal are whether the trial judge erred in: (1) rejecting Coleman’s demand to rescind the sale for redhibitory vices, either on the ground that the horse was an unsound breeder at the time of sale or that the horse had the absolute defect of wind; and (2) denying Coleman a set-off of $105,000.00.
REDHIBITION
Coleman seeks to rescind the sale of Greek Reality on the first ground that he purchased the horse for breeding purposes, and the horse was later found to be an unsound breeder. He argues that the evidence shows that the defect existed at the time of sale, and had he known of the defect, he would not have purchased the horse.
The applicable Civil Code articles on redhibition are as follows:
Art. 2520. Redhibition, definition
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
*1281 Art. 2521. Apparent defects discoverable by buyer
Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
Art. 2522. Latent defects made known to buyer
The buyer can not institute the redhibi-tory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.
Under article 2520, the buyer must prove that the defect existed at the time of the sale. See Smith v. Andrepont, 378 So.2d 479 (La.App. 1st Cir.1979), writ denied, 380 So.2d 102 (La.1980).
Vices of body and vices of character are the latent defects of animals for which the redhibitory action may be brought. La.Civ.Code art. 2524. The vices of body are either absolute or relative. The bare existence of an absolute vice gives rise to the redhibitory action. On the other hand, relative vices only give rise to that action in proportion to the degree in which they disable the object sold. La.Civ. Code art. 2525. Short wind is an absolute vice of a horse. La.Civ.Code art. 2526.
A court of appeal may not reverse a trial judge’s findings of fact in the absence of manifest error. Where the testimony conflicts, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. In other words, if there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
There is no dispute that Greek Reality was an unsound breeder on April 13, 1984. The parties dispute whether that defect existed at the time of sale in October, 1983. The expert opinion evidence on this fact is conflicting.
Dr. Dale Paccamonti, Assistant Professor of Theriogenology at the L.S.U. School of Veterinary Medicine, testified on Coleman’s behalf. He performed a routine breeding soundness examination on Greek Reality on December 20, 1988. He found no motile sperm and classified the horse as an unsatisfactory potential breeder. Dr. Paccamonti classified the horse the same way based on the results of the 1984 tests. He stated that Greek Reality was probably an unsound breeder at the time of sale. However, in so concluding, he assumed that the horse did not suffer from any physical trauma, high fever or infection, and was not given steroids during any time period.
Dr. Memon, who performed the 1984 tests at L.S.U., testified on Neel’s behalf. He believed that, based on what he saw in the semen evaluation on April 13, Greek Reality must have had a different, better semen quality to have impregnated a mare in February. Dr. Memon stated, “[a]s I’m taking the word that he impregnated a mare in February and then in April he’s a dead horse, there has to be something happening in the middle somewhere.” He felt that the horse could have suffered any number of ailments in that time span which could affect his fertility, such as a breeding injury or infectious disease. He stated there were many cases in which that happened. Dr. Memon concluded that, in light of the February impregnation, Greek Reality was probably able to impregnate a mare prior to that time.
The trial judge found that Coleman failed to prove that a defect in Greek Reality’s breeding ability existed at the time of sale, a decision which predominately involved credibility determinations. Because his conclusion is supported by the record, there is no manifest error.
The trial judge did not state his reasons for denying Coleman’s redhibitory action on the basis of a defect of wind. However, we conclude that his ruling is correct under either article 2522 or 2526.
The parties gave conflicting testimony as to when Coleman was informed of the horse’s throat problem. The trial judge could have found Neel more credible and accepted his version that he told Coleman about the condition before the sale. In *1282 that case, article 2522 prohibits Coleman from bringing a redhibitory action.
Short wind is an absolute vice under article 2526, but the notes under that article state it is easily discovered. While Coleman testified that he learned of the problem after the sale, he also stated that it made no difference because he purchased the horse for stud purposes, not for racing. The evidence shows that Greek Reality was a six-year-old, retired race horse at the time of sale. He raced for four years. He was purchased solely for breeding. No evidence was presented showing that the obstruction in his airway affected his breeding ability. Coleman contends that because surgery was already performed on the horse, any further surgery would be fruitless. However, nothing in the record substantiates this contention. Coleman observed the horse twice before the sale and did not detect the defective airway condition. The fact that surgery had been performed was not discovered until the horse was examined in April, 1984, by Dr. Mem-on. The trial judge could have found that bilateral laryngeal hemiplegia does not constitute short wind under the facts of this case, that Coleman discovered or could have discovered the defect, or that Coleman’s objection to the condition was barred by his admission that the condition was immaterial for his purpose. Denial of Coleman’s redhibitory action on any such basis was proper under article 2526.
We conclude that the trial judge was not manifestly erroneous in denying Coleman’s demand for rescission of the sale on the ground of defect of wind. The record supports a finding that Coleman was not entitled to redhibition on that basis under either article 2522 or 2526.
RECONVENTIONAL DEMAND
Neel filed a reconventional demand for the amount of an unpaid check representing the purchase price of three horses he sold to Coleman. Coleman admits that he has possession of the horses and owes the debt. However, he contends he should be able to set-off money Neel owes him based on the unrelated transaction involving their joint purchase of Smoking Gun. Coleman argues he is entitled to compensation or set-off under La.Civ.Code art. 1893, which provides in pertinent part:
Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
The trial judge denied Coleman’s claim for set-off and granted Neel a judgment for $105,000.00 on his reconventional demand. In written reasons for judgment on this issue, the trial judge stated:
The plaintiff, Robert Coleman, made and executed a check drawn on his account payable to the order of defendant, Clay Neel, in the amount of One Hundred Five Thousand ($105,000.00) Dollars for the purchase of several horses. This amount is a personal debt of plaintiff and is currently due. The money which was owed to Louisiana National Bank was a partnership debt as is evidenced by the testimony of both parties. Mr. Neel, as a partner in that transaction, has the right to plead discussion of the assets of the partnership before any virile portion must be remitted by him in payment of the partnership’s debt. Thus, the amount intended to be used as a setoff against Mr. Neel’s reconventional demand is not currently due and cannot be used as a defense to the reconventional demand. Mr. Coleman may pursue Mr. Neel for his virile share after a discussion of the partnerships sole asset. This Court denies the plaintiffs attempt to setoff or use compensation to defend against the reconventional demand.
We disagree with the trial judge’s finding that a partnership existed between Coleman and Neel. After a thorough review of the record, there is simply no evidence that the parties shared in the profits and losses of the venture. This is an indispensable element of a partnership. Gravois v. New England Insurance Co., 553 So.2d 1034, 1038-1039 (La.App. 4th Cir.1989).
*1283 Clay and Neel are co-owners of the horse Smoking Gun. They agreed to own the horse together, with the ownership divided 75% to Coleman and 25% to Neel. Together, and in their individual capacities, they signed a note representing the purchase price of the horse. The parties are solidary obligors because they were each liable to the bank for the entire amount of the note. La.Civ.Code art. 1794. However, as to the other, each is liable only for his virile portion. La.Civ.Code art. 1804. As stated above, Neel’s virile portion is 25% of the amount due on the note (principal and interest of $451,898.63 x .25 = $112,974.65). Because the debt consists of the amount due on the loan (not the value of Smoking Gun), it is liquidated and presently due. Under La.Civ.Code art. 1893, compensation extinguishes both obligations to the extent of the lesser amount. Thus, since Coleman is obligated to Neel for $105,000.00 for the purchase of three horses and Neel is obligated to Coleman for $112,974.65 for his share of the Smoking Gun loan, compensation took place by operation of law and Coleman’s obligation was extinguished. Neel’s reconventional demand against Coleman should have been denied.
DECREE
The trial court’s judgment on the main demand dismissing Coleman’s suit for red-hibition is affirmed. Judgment in favor of Neel on his reconventional demand is reversed. All costs of this appeal are assessed equally to the parties.
AFFIRMED IN PART; REVERSED IN PART.
CARTER, J., concurs.