653 So.2d 830 (1995)
MEDLINE INDUSTRIES, INC. t/a Caring International
v.
ALL-MED SUPPLY & EQUIPMENT, Dent Wood and Laban Hoover.
No. 94 CA 1504.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
*831 John D. Brady, Steven A. Debosier, Newman, Mathis, Brady, Wakefield & Spedale, Baton Rouge, for plaintiff-appellant Medline Industries, Inc. t/a Caring Intern.
Clinton Hyatt, Jr., Baton Rouge, for defendant-appellee Dent Wood.
Before GONZALES and PARRO, JJ., and REDMANN,[1] J. Pro Tem.
PARRO, Judge.
In this suit on open account, the city court dismissed the creditor's claim against an individual defendant being sued as a partner in a business partnership which the court found was never consummated. In this appeal by the creditor from the city court's judgment, we affirm.

Facts
Prior to May of 1990, Dent Wood ("Wood"), a pharmacist, owned and operated Parkwood Pharmacy ("Parkwood"). In August of 1990 after the closure of Parkwood, Wood was approached by Laban Ray Hoover ("Hoover"), an acquaintance of three or four years, about the possibility of forming a business to be named All-Med Supply and Equipment ("All-Med") that would sell medical *832 supplies to nursing homes and other businesses. Wood informed Hoover that he did not have any money to begin such a business and that the only way that he would consider forming such a business was if they could obtain a line of credit from a supply company. However, Wood was doubtful that they would be able to obtain the credit needed to operate such a business.
In pursuit of this idea, Hoover contacted Medline Industries, Inc. t/a Caring International ("Medline") about the possibility of obtaining a line of credit for All-Med. Hoover received a "Caring International Dealer Application" from Medline and presented it to Wood for his signature. After obtaining Wood's signature on August 17, 1990, Hoover forwarded the application to Medline by facsimile transmission. This application identified All-Med as a new partnership having as its partners Wood and Hoover. The listed trade references were businesses with whom Wood had had prior business dealings while operating Parkwood. The applicants requested that Medline give consideration to the fact that Wood was a registered pharmacist and had owned and operated Parkwood for 14 years.
Upon completion of its review of All-Med's application, Medline declined to extend credit to All-Med on the basis of the application. Upon learning of Medline's refusal, Hoover agreed to personally guarantee All-Med's account and signed a personal guaranty. Hoover began doing business with Medline under the name of All-Med. Wood was unaware of these actions until Medline demanded payment from him prior to filing this suit.
In evaluating All-Med's creditworthiness, Medline and its representatives dealt exclusively with Hoover, and never dealt directly with Wood. Wood never signed, nor was he asked to sign, a personal guaranty in favor of Medline on All-Med's behalf. Medline never gave Wood notice that All-Med's line of credit had been approved. Wood did not transact any business with Medline in pursuit of commencing the proposed business. From the business activities engaged in by Hoover, Wood received no economic benefit.
In light of All-Med's failure to pay on its open account, Medline instituted this suit against All-Med, Wood (in his alleged capacity as a partner of All-Med) and Hoover (a guarantor) to recover amounts owed. This matter proceeded to trial against Wood.[2] The city court found that the proposed partnership between Hoover and Wood was never consummated, that Wood was never advised by Medline or its representatives that the credit application had been approved, and that no continuing guaranty was obtained from Wood. Based on these findings, the city court dismissed Medline's claim against Wood. Medline appeals and contends that the trial court erred in finding that a partnership was not created in light of the signed credit application and in failing to find that Wood was estopped from denying the existence of the partnership.

Standard of Review
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id. at 882; see Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1st Cir. 1990).

Suretyship
Regarding Wood's obligation for All-Med's debts, the city court, relying on Southern *833 Air Conditioning of New Orleans, Inc. v. Cumberland Homes, Inc., 418 So.2d 745 (La. App. 5th Cir.1982) and LSA-C.C. art. 3038, stated that "[t]he obligation to pay the debts of another, the proposed partnership, must be not only in writing, but expressly stated."
In determining the applicability of this principle to the facts of this case, we look to the principles governing the law of suretyship which are found in LSA-C.C. art. 3035 et seq. LSA-C.C. art. 3035 defines suretyship as follows:
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so.
Suretyship must be express and in writing. LSA-C.C. art. 3038. Furthermore, in order to establish a suretyship, such a writing must be received by the creditor. LSA-C.C. art. 3039.
Applying the above rules of suretyship in examining the credit application, we find that Wood did not bind himself to Medline to fulfill the obligation of All-Med upon the failure of All-Med to do so. The credit application, admittedly signed by Wood, merely authorized Medline to contact the listed references in order to evaluate and establish a line of credit. There was no individual, express promise by Wood to pay any specific or unspecified outstanding bills of All-Med. Therefore, we conclude that Wood's signature on the credit application was insufficient to make Wood a guarantor under the laws of suretyship.[3]

Existence of a Partnership
Nonetheless, we need to determine if Wood was personally obligated to pay, all or part of, the debt of All-Med under some other legal theory such as the laws of partnership as suggested by Medline. Regarding the debts of a partnership, the partnership as principal obligor is primarily liable for its debts. LSA-C.C. art. 2817. However, a partner is bound for his virile share of the debts under the law. Id. Therefore, if Wood was a partner in a partnership known as All-Med, he would be subject to personal liability for his virile share of the debts of the partnership without the need of an express statement and a writing.
In determining whether a partnership existed between Wood and Hoover, we note that a partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. LSA-C.C. art. 2801. To be considered a partnership, a business relationship must meet the following established criteria: (1) the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill, or industry, furnished to the business in determined proportions by them; (2) all parties must share in the losses as well as the profits of the venture; and (3) the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. Gravois v. New England Insurance Co., 553 So.2d 1034, 1038 (La.App. 4th Cir.1989); Sas Jaworsky v. Le-Blanc, 239 So.2d 176, 178 (La.App. 3rd Cir.), writ denied, 256 La. 911, 240 So.2d 373 (1970). These criteria require findings of fact. Tabco Exploration, Inc. v. Tadlock Pipe & Equipment, Inc., 617 So.2d 606, 609 (La.App. 3rd Cir.), writ denied, 625 So.2d 1057 (La.1993). When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings. Such findings of fact may not be set aside absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
There is ample evidence to prove that Wood and Hoover contemplated the formation of a partnership. However, it is clear that the formation of this partnership was contingent on the proposed partnership's ability to obtain credit from its suppliers. In light of Wood's lack of knowledge that Medline had in fact agreed to extend credit to *834 their proposed partnership, we find that the mutual consent necessary for the creation of a partnership was lacking. Therefore, Medline failed to prove the existence of a partnership of which Wood was a partner.

Partnership Under the Theory of Estoppel
Regarding Medline's contention that Wood and Hoover created a partnership by estoppel by their outward manifestations of a partnership to third parties, the evidence fails to support this claim.
A partnership can be created by operation of law as to third parties on the grounds of estoppel even though the parties themselves may not have intended to form a partnership. Hartwick v. Hartley, 598 So.2d 1241, 1242 (La.App. 4th Cir.), rev'd on other grounds, 604 So.2d 957 (La.1992); Gravois v. New England Insurance Co., 553 So.2d at 1039. Such a finding is made in those instances in which a person holds himself out as a partner to the justified detrimental reliance of a third party. Id.
The record in this matter is devoid of any evidence which demonstrates that Medline justifiably relied to its detriment on the existence of a partnership between Wood and Hoover. The only outward manifestation by Wood was his signature on a credit application. Although this application revealed primarily, if not exclusively, references provided by Wood, Medline found that these references, combined with Wood's business history, formed an inadequate basis for extending credit to the proposed partnership. In checking the references provided, it should have become obvious to Medline that these references were provided by Wood and that All-Med was attempting to obtain a line of credit based on Wood's credit standing. Yet, Medline never contacted Wood regarding All-Med's request for credit. Rather, it chose to deal exclusively with Hoover. Therefore, it was not until Hoover executed and provided the signed guaranty that Medline decided to extend credit. Based on these facts, this court finds that Medline did not rely to its detriment on any outward manifestation by Wood and Wood did not hold himself out as a partner to the justified detrimental reliance of Medline. Accordingly, Wood is not liable to Medline under the laws pertaining to partnership by estoppel.
After considering the evidence and the applicable law, this court concludes that a reasonable factual basis existed for the city court's determination that the proposed partnership never came into being and that Wood was not liable for the debts of Hoover's medical supply business. Furthermore, this court is unable to find that the factual determinations of the city court are manifestly erroneous or that the city court committed legal error.

Decree
For the foregoing reasons, the city court judgment is affirmed at Medline's costs.
AFFIRMED.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] A default judgment was obtained against All-Med and Hoover when they failed to timely file an answer.
[3] Apparently Medline realized that the signatures on the credit application were insufficient to constitute a personal guaranty by either Wood or Hoover since it required that Hoover sign a "Guaranty" as a prerequisite to extending credit to All-Med.