496 So.2d 549 (1986)
SUCCESSION OF Charles Edward DAVIS.
No. 85 CA 0859.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*550 Allen B. Pierson, Jr., Ponchatoula, for Irene G. Davis.
Joseph H. Simpson, Amite, for Stanley Davis, Golda Webb, and David Davis.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This matter is before us on a rule to traverse a sworn descriptive list of succession property.

FACTS
Charles Edward Davis died intestate on August 9, 1984. During his life, decedent had been married three times: first to Betty Tate, from whom he was divorced; second to Juanita Hand, from whom he was divorced; and third to Irene Gregoire, with whom he was residing at the time of his death. No children were born of decedent's second and third marriages, but three children were born of his first marriage, namely: Darlene Davis Webb, Stanley Davis and David Davis.
On April 20, 1971, decedent, who was then single, having been divorced from Betty Tate, purchased the following described property:
A certain tract or parcel of land in the North part of Section 12, Township 7 South, Range 7 East, Tangipahoa Parish, Louisiana, more fully described as commencing at a point on the East right-of-way line of U.S. Highway 51, which point is 114 feet West and 485 feet South 10 deg. 45 min. East of the quarter section corner on the North side of Section 12, *551 then run South 11 deg. 30 min. East along right-of-way 182 feet to a point; thence South 88 deg. 15 min. East 393 feet to a point; thence North 9 deg. 35 min. East 80 feet to a point; thence North 76 deg. West 456 feet to the point of beginning, being the same property acquired by James F. Stanga by deed in COB 212 page 614 of the official records of Tangipahoa Parish.
Thereafter, on June 30, 1976, while married to Irene Gregoire, decedent executed an act of exchange with Tickfaw Development Corporation. In the act of exchange, decedent exchanged the above described Tangipahoa Parish property for the following described Livingston Parish property:
A certain tract or parcel of land in the Parish of Livingston, State of Louisiana and being more particularly described as Lot 8, Block 4, Terry Harbor in Section 39, T 8 S R 7 E. All as per survey by J.C. Kerstens, Registered Land Surveyor dated May 10, 1975.
The act of exchange provided that the properties exchanged were equal in value, but made no statement that decedent was exchanging his separate property for property which was to be maintained as separate property.[1]
On August 30, 1983, by credit deed, Charles E. Davis and Irene Gregoire Davis sold the exchanged property to Thomas Turner Jackson and Jeanette Hensley Jackson for $38,000.00. The promissory note, identified with the Thomas T. Jackson credit deed, was made payable to Charles E. Davis and Irene Gregoire Davis in 240 monthly installments as follows:
239 payments of $366.70 each, the first payment due on the 1st day of October, 1983, and a like payment due on the same day for the next succeeding 238 months; and a final payment of $373.11; payments to be applied first to interest and then to principal.
Shortly thereafter, decedent died.
On October 1, 1984, Irene Gregoire Davis filed a petition for administration of decedent's estate and attached to her petition the sworn descriptive list of the succession property. The promissory note, identified with the Thomas T. Jackson credit deed, was listed in the petitioner's descriptive list as community property and assigned a value of $37,480.49.
Thereafter, on February 7, 1985, decedent's children Darlene Davis Webb, Stanley Davis and David Davis filed a rule to traverse the sworn descriptive list of the succession property, contending that the $37,480.49 promissory note, identified with the Thomas T. Jackson credit deed, should be inventoried as separate property.
After a hearing, the trial judge found that the note dated August 30, 1983, payable to Charles E. Davis and Irene Gregoire Davis was the separate property of Charles Edward Davis and ordered the inventory of the succession property to be amended accordingly.
From this judgment, Irene Gregoire Davis appeals, raising the following issues:[2]
I.
The note in question was actually a part of the community between the decedent, Charles Edward Davis, and Irene Gregoire Davis under authority of Article 2343.1 of the Louisiana Civil Code.
II.
In the alternative, if this Court finds that the note was not part of the community between the decedent and appellant, then appellant maintains that the decedent donated an undivided one-half interest in the note to his wife under authority of Article 2341 of the Louisiana Civil Code.

*552 III.
The form of the donation from the decedent was correct in that it was in fact by authentic act.
IV.
In the alternative, if this Court determines that the donation was not by authentic act, then appellant maintains that the donation complies with the requirements of R.S. 10:3-201(4).

NATURE OF PROMISSORY NOTE
Appellant contends that the promissory note formed part of the community property belonging to her and decedent.
LSA-C.C. art. 2340 provides:
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. (footnote omitted)
In the instant case, the promissory note by Thomas Turner Jackson made payable to Charles E. Davis and Irene Gregoire Davis was acquired by decedent and was in his possession during the existence of the regime of community of acquets and gains between him and appellant. Clearly, under LSA-C.C. art. 2340, the promissory note is presumed to be community property.
However, this presumption may be rebutted by proof of the separate nature of the property in question. The party asserting the separate nature of the property acquired during the marriage has the burden of overcoming a strong presumption in favor of the community. Tullier v. Tullier, 464 So.2d 278 (La.1985); Curtis v. Curtis, 403 So.2d 56 (La.1981).
LSA-C.C. art. 2341 defines separate property and provides that:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
Comment (c) to this provision states that the principle of real subrogation is applicable to both separate and community property. Thus, when a thing forming part of the separate property of a spouse is converted into another thing, the mass of the separate property is not diminished. The new thing takes the place of the old: "Subrogatum capit naturam subrogati." Newson v. Adams, 3 La. 231, 233 (1882); Yiannopoulos, Civil Law Property § 79 (1966). See also McElwee v. McElwee, 255 So.2d 883 (La.App. 2nd Cir.1971), writ denied, 260 La. 861, 257 So.2d 434 (1972).
In the case sub judice, decedent purchased the Tangipahoa Parish property in 1971 prior to his marriage to appellant. Clearly, under LSA-C.C. art. 2341 this property was his separate property as the property was "acquired by a spouse prior to the establishment of a community property regime." Additionally, when decedent exchanged the Tangipahoa Parish property for the Livingston Parish property in 1976, the new piece of property took the place of the old and continued as the separate property of decedent. Likewise, when decedent sold his separate property to Jackson in 1983, the promissory note received as consideration for the sale became his separate property. See LSA-C.C. art. 2341, comment (c).
*553 Clearly, decedent's children have successfully rebutted the presumption that the promissory note was community property, and as such, the property is the separate property of decedent. Therefore, in order for the promissory note to have become part of the community property of decedent and appellant, decedent must have transferred an interest in the note to the community or to appellant in some manner prescribed by law.

TRANSFER OF THE PROPERTY TO THE COMMUNITY
Appellant contends that decedent transferred to her an undivided one-half interest in the promissory note. Appellant, alternatively, contends that this transfer was accomplished by stipulation pursuant to LSA-C.C. art. 2343.1, by donation under LSA-C.C. art. 1536, or by negotiation under LSA-R.S. 10:3-201(4).

Transfer by Stipulation under LSA-C.C. art. 2343.1
Appellant contends that the credit deed transferring the Livingston Parish property from decedent to Jackson and the note given to both decedent and appellant as consideration for the property transferred transformed the note into community property.
Under LSA-C.C. art. 2343.1:
The transfer by a spouse to the other spouse of a thing forming part of his separate property, with the stipulation that it shall be part of the community, transforms the thing into community property. As to both movables and immovables, a transfer by onerous title must be made in writing and a transfer by gratuitous title must be made by authentic act.
Comment (b) of this article explains that a spouse may convey to the other spouse a thing that forms part of the transferor's separate property, with the stipulation that the thing shall be part of the community. The thing may be some thing that the transferor owns as sole owner or in which he has an undivided interest. In effect, the transferor conveys to the other spouse one half of what he owns and retains the other half as co-owner under the regime of acquets and gains.
In the case sub judice, the record is devoid of any transfer of property between decedent and appellant stipulating that the note should be part of the community. While property was transferred from decedent to Jackson by credit deed dated August 30, 1983, this transaction did not transfer ownership of the property or the promissory note to appellant. The appearance of appellant's name as a seller on the Act of Sale and as a payee on the promissory note did not transform decedent's separate property into community property.

Transfer by Donation under LSA-C.C. art. 1536
Appellant also contends that decedent properly donated the note to the community or to her by authentic act pursuant to LSA-C.C. art. 1536.
LSA-C.C. art. 1536 provides:
An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.
In Fontenot v. Estate of Vidrine, 401 So.2d 584 (La.App. 3rd Cir.1981), the court held that there was no authentic evidence of an inter vivos transfer of a note and that, as a result, the transfer was a nullity.
In the instant case, there is no evidence of an authentic act donating and/or transferring the note to appellant. First, decedent did not sign any authentic act donating the note to the community or to appellant. Further, assuming the note executed by the maker to decedent and appellant could transfer ownership from decedent to appellant, it is not in authentic form. Clearly, decedent did not donate the note or any part of it to the community or to appellant.

*554 Donation under LSA-R.S. 10:3-201(4)

Appellant further contends that decedent could have and did transfer the note to the community or to appellant pursuant to LSA-R.S. 10:3-201(4).
LSA-R.S. 10:3-201 addresses "Transfer: right to endorsement" and provides:
(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.
(2) A transfer of an interest created in an instrument by way of security vests the foregoing rights in the transferee to the extent of the interest transferred.
(3) Unless otherwise agreed a transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner.
(4) Donations inter vivos of negotiable instruments shall be governed by the provisions of this Chapter, notwithstanding any other provision of the Louisiana Civil Code or of any other law of this state relative to the form of donations inter vivos, to the contrary.
In addition, this Paragraph is remedial and retrospective. Any donation inter vivos of a negotiable instrument made on or before the effective date of this Paragraph, in accordance with the provisions of Chapter 3 of Title 10 of the Louisiana Statutes of 1950 or the Louisiana Civil Code or any other law of this state relative to the form of donations inter vivos, is valid.
While appellant correctly argues that donations inter vivos of negotiable instruments may be made without compliance with LSA-C.C. art. 1536, donations inter vivos of negotiable instruments must comply with the provisions of the Commercial LawsCommercial Paper, LSA-R.S. 10:3-101, et seq. LSA-R.S. 10:3-201 deals only with transfers and negotiation of commercial paper. The record is devoid of any evidence that decedent transferred or negotiated the promissory note to appellant. As such, appellant could obtain no interest in the note under LSA-R.S. 10:3-201.

CONCLUSION
Clearly, appellant has failed to establish that decedent transferred the note to her or to the community, in a manner prescribed by law. Therefore, we find that the trial judge correctly determined that the promissory note is decedent's separate property and correctly ordered that the inventory of the succession property be amended accordingly.
For the above reasons, the judgment of the trial court is affirmed. Appellant is cast for all costs.
AFFIRMED.
NOTES
[1] Neither petitioner nor decedent's children dispute the fact that the property exchanged was separate in nature.
[2] Although we will not address each assignment of error specifically, the opinion adequately addresses all issues raised.