529 So.2d 1317 (1988)
Mildred Haden, wife of Richard Earl O'KREPKI
v.
Richard Earl O'KREPKI.
No. 88-CA-30.
Court of Appeal of Louisiana, Fifth Circuit.
July 26, 1988.
Writ Denied November 11, 1988.
*1318 Bernard M. Plaia, Jr., Metairie, for plaintiff/appellee.
A.W. Wambsgans, Cronvich, Wambsgans & Michalczyk, Metairie, for defendant/appellant.
Before KLIEBERT, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Defendant appeals from a declaratory judgment which determined that a community property regime existed between him and plaintiff, his former wife, from the date of their marriage.
On September 25, 1984, plaintiff, Mildred O'Krepki, nee Haden, and defendant, Richard O'Krepki, entered into an antenuptial agreement in which they stipulated that there would be no community of acquets and gains during the existence of their contemplated marriage, choosing instead to remain separate in property. Thereafter, on October 31, 1984, the parties were married.
On September 8, 1986 the parties entered into another matrimonial agreement by authentic Act before a Notary Public for the Parish of Jefferson. This Act recited in part:
"... on September 25, 1984 [Mildred Haden O'Krepki and Richard E. O'Krepki] ... entered into a marriage contract prior to marriage which was celebrated on December 31, 1984 and which contract was duly recorded in Jefferson Parish in C.O.B. 1116 folio 332.
Appearers further allege that they do, by these presents, jointly re-establish the community of acquets and gains constituting the legal regime under the laws of Louisiana, particularly under Civil Code Article 2329, as though they had not taken any action previous to marriage."[1]
The foregoing agreement was duly recorded in the Clerk of Court's office for Jefferson Parish in C.O.B. 1572 folio 43 on September 25, 1986.
*1319 On March 27, 1987, plaintiff instituted action against defendant for a separation from bed and board on the ground of cruel treatment and for a partition of the community of acquets and gains existing between them.
On July 15, 1987, plaintiff instituted this present declaratory action against defendant to have the trial court interpret their 1986 matrimonial agreement and to declare specifically, "whether or not a community of acquets and gains existed between them from October 31, 1984 the date of their marriage to the present time." Judgment was rendered in favor of plaintiff, recognizing that the parties' 1986 matrimonial agreement modified their antenuptial agreement such that a community of acquets and gains was established and existed between the parties from the date of their marriage. Defendant appeals from that judgment, asserting that the court erred in finding that the establishment of the parties' community begins from the date of the parties' marriage, instead of from the date of the matrimonial agreement.
Defendant's major objection to the judgment is that it adversely effects the parties' rights and those of third persons, in that it permits a reclassification of each party's previously acquired property without following the manner and form set forth under law (LSA-C.C. arts. 2343 and 2343.1) to accomplish such a change. We think defendant's argument is without merit for the following reasons.
Article 2343 deals with donation by one spouse to the other spouse of his interest in a thing forming part of the community. Article 2343.1 deals with the transfer by one spouse to the community of a thing forming part of his separate property. Defendant contends on the basis of these articles, that since neither he nor plaintiff specified within the matrimonial agreement itself which "things" were to be reclassified community things, and further, that in failing to specify the effective date of the act, the parties showed that they intended the community to begin from the date of the confection of the matrimonial agreement. However, we find that the parties did intend by their matrimonial agreement to adopt the legal regime retroactively. We think such intent was clearly shown by their use of the word "re-establish" (which means to establish again) rather than "establish" (which means to begin) together with their use of the phrase "as though they had not taken action previous to marriage". Hence, we reject defendant's suggestion to the contrary. We further find unpursuasive defendant's argument, that the parties could not legally agree between themselves to establish a legal regime retroactively to the date of their marriage without a piece by piece donation or transfer of their respective property to the community because of prejudice to third persons.
Prior to 1979, interspousal contracts were prohibited by law in Louisiana. See, LSA-C.C. art. 1790 of the 1870 Code. This incapacity based on the marital status, contained in article 1790, was removed by the Legislature in 1979. See LSA-Acts 1979, No. 711 Sec. 1. Spouses are now free to enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. LSA-C.C. art. 2329. And see generally, LSA-C.C. art. 7 (Laws for the preservation of the public interest.)
In the instant case, defendant does not show us how establishing the community retroactively to the date of the parties' marriage by their matrimonial agreement is against the public policy of this State or express prohibition of law. With regard to the rights of third persons, even though the spouses intended between themselves to reestablish a legal regime from the date *1320 of their marriage, their matrimonial agreement is effective towards third parties only upon its proper recordation. LSA-C.C. art. 2332.[2],[3] Moreover we think the issues here raised are not controlled by those statutes dealing with donations and transfers between the parties of individual things to the community, as defendant urges; rather, we believe the situation is more like that addressed by LSA-C.C. art. 155.
Article 155 deals with the re-establishment of the community regime upon reconciliation of the formerly separated spouses. Although in the instant case we are not dealing with re-establishment of a community regime after its dissolution by separation of the spouses from bed and board, we are nevertheless dealing with the re-establishment of a community regime after its initial rejection prior to marriage. That common denominator, we believe, makes the values at issue here similar to those which prompted the 1985 legislative amendment to article 155. Bearing that in mind, we observe that article 155, as amended, provides that upon reconciliation of the spouses, the community shall be re-established between the spouses as of the date of the filing of the original petition in the action for separation from bed and board. However re-establishment shall be effective toward third persons only upon filing notice of the re-establishment in accordance with the provisions of LSA-C.C. art. 2332. In addition, article 155 dictates that the re-establishment of the community shall not prejudice the rights of third persons validly acquired prior to the filing of such notice. We further observe the obvious policy reason behind this article is to encourage, through procedural facility, a return to the legal regimethe legislators being convinced of its desirability and being interested in encouraging most spouses in the state to live under its regime. See also, LSA-C.C. art. 2329.
Since we find no policy reason not to give effect to the parties' 1986 matrimonial agreement as written, and in view of the fact that requirements of recordation will preserve the rights of third persons dealing with the parties, we affirm the judgment of the trial court, that a community of acquets and gains was established and existed between the parties from the date of their marriage.
AFFIRMED.
KLIEBERT, J., dissents.
KLIEBERT, Judge, dissenting.
I respectfully dissent from the majority view. For the reasons which follow, I believe the trial judge erred in concluding the legal regime was established retroactive to the date of the marriage.
The September 8, 1986 marital agreement does not specifically state the establishment of the legal regime was to be retroactive to the date of the marriage, nor does the agreement reflect a desire to change the status of the income received of property (movable or immovable) acquired prior to the September 8, 1986 agreement. Moreover, there is nothing to indicate the parties were aware a retroactive establishment of the legal regime would change the classification of previously acquired property.
Civil Code Articles 2329 and 2330, which were part of the new rules enacted by Act 709 of 1979, authorize the establishment of a legal regime during the marriage in the manner done here. Neither article, however, addresses the question of whether a *1321 married couple can retroactively establish the legal regime and thereby change the status of the property previously acquired. Under the former and present law, the status or classification of property as community or separate is fixed at the time of its acquisition. Whatley v. Whatley, 439 So.2d 444 (2nd Cir.1983); Cooper v. Heirs of Cooper, 421 So.2d 314 (1st Cir.1982); Succession of Adger, 457 So.2d 146 (2nd Cir.1984).
The only provisions I found authorizing married couples to change the classification of previously acquired property are Civil Code Articles 2343 and 2343.1. Under these articles, couples can change the classification of property during the existence of the marriage, but the manner and form set forth in the articles must be followed to accomplish the reclassification. For example, as to both movables and immovables, the transfer of "a thing" forming part of the separate property must be in writing if by onerous title, and by authentic act if by gratuitous title. Moreover, reading the articles in their entirety leads me to conclude there must be a described and identifiable "thing" which is being reclassified. Therefore, in my view, under the rules governing marital regimes, a married couple cannot change the status of previously acquired property by merely establishing a legal regime retroactive to the date of the marriage. To effect such a change the transfer must be in writing, the writing must describe or identify the specific property being reclassified and the transfer must be by authentic act if the transfer is gratuitous. The marital agreement involved here does not meet these requirements because it does not describe or identify the specific property whose classification would be changed by a retroactive establishment of the legal regime. Moreover, to conclude that the marital agreement would effectively change the classification of previously acquired immovable property, as did the majority here, is to violate the present rules for the transfer of immovables.
Accordingly, I would amend the judgment of the trial court to provide that the legal regime established by the September 8, 1986 marital agreement is effective as of that date rather than retroactive to the date of the marriage.
NOTES
[1] LSA-C.C. art. 2329 reads:

Art. 2329. Exclusion or modification of matrimonial regime
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.
Acts 1979, No. 709, Sec. 1. Amended by Acts 1980, No. 565, Sec. 1.
[2] LSA-C.C. art. 2332 reads:

Art. 2332. Effect toward third persons
A matrimonial agreement, or a judgment establishing a regime of separation of property is effective toward third persons as to immovable property, when filed for registry in the conveyance records of the parish in which the property is situated and as to movables when filed for registry in the parish or parishes in which the spouses are domiciled.
Acts 1979, No. 709, Sec. 1.
[3] We also note the remedy that the revocatory action provides creditors when the matrimonial agreement is executed in fraud of their rights. LSA-C.C. art. 2036.