610 So.2d 1045 (1992)
Loretta Hebert LANDRY, Plaintiff-Appellant,
v.
Christopher W. LANDRY, Defendant-Appellee.
No. 91-1254.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
*1046 Gerard B. Wattigny, New Iberia, and Ray Allain, Jeanerette, for plaintiff-appellant.
Robert Cole, Lafayette, for defendant-appellee.
Before GUIDRY, DOUCET and WOODARD, JJ.
WOODARD, Judge.
This is a suit for the partition of community property.
Plaintiff, Loretta Hebert Landry, appeals the judgment of the trial court and asserts the following assignments of error: (1) the trial judge erred in denying plaintiff reimbursement for separate funds used in the purchase of a community automobile; (2) the trial court erred in finding that a life insurance policy for the minor son was not a community asset and not subject to partition; (3) the trial court erred in denying plaintiff reimbursement for separate funds used to purchase the life insurance policy for the minor son; and (4) the trial court erred in denying plaintiff's cross-claim and finding that the sale of 110,000 shares of community stock by defendant did not constitute fraud or bad faith management of community property.
Plaintiff married defendant, Christopher W. Landry, on August 12, 1978. On June 6, 1990, plaintiff filed for divorce and a judgment of divorce was granted on June 25, 1990. In his reconventional demand, defendant asked for partition of the community property. Plaintiff then filed a cross claim against defendant asserting fraud or bad faith management of community property. The partition suit was tried on May 9, 1991, and formal judgment was signed on August 12, 1991. Plaintiff appeals this judgment and defendant has answered the appeal.
The relevant facts of this case will be discussed as they pertain to each assignment of error.

THE MERCEDES
In her first assignment of error, plaintiff contends that the trial court erred in denying *1047 her claim for reimbursement for separate funds used in the purchase of a 1981 Mercedes automobile.
On August 18, 1981, plaintiff purchased a $26,000 Mercedes using $12,000 of her separate funds. She withdrew this amount from her separate Certificate of Deposit (CD), and used the money as the down payment on the car. Plaintiff gave the car to defendant as an anniversary gift. A few months later defendant received a company car. He began using the company car and plaintiff drove the Mercedes for the duration of the marriage.
Defendant testified that he wanted to reimburse plaintiff for the $12,000 she withdrew from her CD because he was concerned her parents would be upset. Therefore, when the parties sold their 1979 Chevrolet truck and their 1979 Corvette, defendant gave the proceeds from the sale of these automobiles to plaintiff to do with as she wished. Defendant testified that these funds were given to plaintiff as reimbursement for the $12,000 she withdrew from her CD. Although plaintiff had the option of putting all of the money into the CD, the trial record reflects that she only deposited $5,000 from the sale of the truck into the CD. The $9,850.57 from the sale of the Corvette was deposited by plaintiff into a community checking account.
The trial judge determined the Mercedes was community property at the termination of the regime because it was returned to the community when defendant gave the car to the plaintiff for her use. We agree that the Mercedes should be classified as a community asset, although we do not find that it was returned to the community. When the car was given to the defendant as a gift, it became his separate property. Under La.C.C. art. 2343.1, in order to transfer separate property to the community, the transfer must be done by authentic act and with the stipulation that it shall become part of the community. There is no evidence that this was ever done. Therefore, the Mercedes was never given to the community.
The trial court was correct in classifying it as a community asset for purposes of distribution of the property, however, because the parties stipulated, for purposes of the Partition hearing, that it was a community asset. At trial, Plaintiff's Exhibit 1 was agreed to by both parties when it was introduced and accepted into evidence. This exhibit is a comparison of the Detailed Descriptive Lists prepared by each party. It lists items of property and indicates whether the parties agree that it is a community asset and what they determine the value of the asset to be. Item number 22 in Schedule I is described as "1981 Mercedes auto in name of Loretta Hebert." The value of the automobile as agreed upon is $3837.00. A stipulation binds all of the parties and the court. Matthew v. Aetna Cas. and Sur. Co., 578 So.2d 242 (La. App. 3 Cir.1991). Therefore, the court is bound to this classification.
Although plaintiff used separate funds to purchase this now community asset, she does not have a valid claim for reimbursement. When she purchased the Mercedes, plaintiff intended it to be an anniversary gift to defendant, and defendant confirmed in his testimony that it was a gift. In effect, the proceeds he gave her from the sale of the vehicles were gifts back to her. Reimbursement does not apply to gifts from one spouse to another. The trial court denied plaintiff's reimbursement claim stating that she was already fully reimbursed from the proceeds of the sale of the two community vehicles. We affirm the court's decision but for reasons stated above.

THE LIFE INSURANCE POLICY
In her second assignment of error, plaintiff contends that the trial court erred in determining that a life insurance policy purchased for the minor son was not a community asset and in denying her claim for reimbursement for allegedly separate funds used to purchase the policy. In his answer to the appeal, defendant asserts that the trial court erred in not finding the policy to be community property purchased with community funds. He further contends that the trial court erred in naming *1048 plaintiff as the owner of the policy, but asserts that if the policy is to be awarded to plaintiff, the value of the policy should be reflected in the value of the assets she received in the partition and that he should be awarded one-half of that value.
Plaintiff and defendant purchased the life insurance policy on April 11, 1986 with borrowed funds. On July 24, 1986, plaintiff withdrew $24,955.86 from the CD to repay the loan. Plaintiff asserts that at least $7,327.42 of the amount withdrawn from the CD were her separate funds and that she is owed reimbursement for one-half of this amount. Defendant contends no reimbursement is owed because, on the date the funds were withdrawn from the CD, plaintiff's separate funds were so commingled with community funds as to render all of the money in the CD community property. The trial court found that the life insurance policy was a whole life policy for the benefit of the minor son, Ryan. It found that plaintiff used $13,000 of her separate funds to purchase the policy and held plaintiff to be the owner of the policy. However, plaintiff was not due any reimbursement because the trial court also found that the policy was neither an asset nor an obligation of the community, and thus not subject to partition. We disagree.
In Plaintiff's Exhibit 1, the parties stipulated that the policy was a community asset. Item number 23 in Schedule I, described as "Ryan's insurance policy with a net equity at present and ownership to be assigned to one party," is assigned a value of $14,067.00. Because the parties stipulated it was a community asset, the policy should have been recognized as a community asset by the trial court and credited to the party who received the policy in the partition of community assets.
The trial court declared plaintiff to be the owner of the policy. Defendant asserts that he is the registered owner of the policy, but argues that if it is to be awarded to plaintiff, the value of the policy should be reflected in the distribution of assets. Because the life insurance policy is a community asset and plaintiff was determined to be the owner, we amend the trial court judgement to include the value of the life insurance policy in the distribution of assets to plaintiff. Thus, the value of the policy of $14,067.00 is added to the value of the assets received by plaintiff ($69,346.54) for an amended value of assets received by plaintiff of $83,413.54.
We also find that plaintiff has a valid claim for reimbursement. Because the life insurance policy was a community asset, the loan which provided the funds to purchase the policy constituted a community obligation. La.C.C. art. 2365 provides in pertinent part:
"If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used."
Defendant contends that no reimbursement is due because all of the funds in the CD were community funds. He argues that the original 1978 CD of $25,000 was so commingled with community funds from deposits and withdrawals that were made through the years, that by 1986 the separate funds were no longer identifiable and therefore all of the funds in the CD were community property.
It is uncontroverted that the original $25,000 in the CD were plaintiff's separate property. Through the years, withdrawals were made from the CD and community funds were deposited into it. Louisiana jurisprudence provides:
"The mere mixing of separate and community funds in the same account does not, of itself, convert an entire account into community property; however, when separate funds are commingled with community funds indiscriminately, so that the separate funds cannot be identified or differentiated from the community funds, then all of the funds are characterized as community funds."
Thibodaux v. Thibodaux, 577 So.2d 758 (La.App. 1 Cir.1991), relying on Curtis v. Curtis, 403 So.2d 56 (La.1981).
*1049 In the case sub judice, Exhibit D-19, reproduced at the end of this opinion, shows a breakdown of the activity in the CD from 1978 through 1986. All deposits and withdrawals are reflected so that they benefit the community. Interest from the CD deposited into the account is credited to the community portion of the funds. Withdrawals from the CD are debited to the separate portion of the funds, unless the withdrawal was of the interest earned on the CD. If interest were withdrawn, it was debited to the community portion of the funds because the interest earned was community property. Plaintiff testified that this exhibit is an accurate reflection of the activity involving the CD and it was admitted into evidence, marked Defendant's Exhibit # 19.
The exhibit reflects that $7,327.42 is identifiable as plaintiff's separate funds used to pay off the community loan. Although the trial court found $13,000 of plaintiff's separate funds were used to repay the loan, we find plaintiff has only proven that $7,327.42 of the total amount of the CD constituted her separate property. Therefore, we reverse the trial court judgment denying plaintiff's claim for reimbursement and amend the trial court judgment to reflect that plaintiff used $7,327.42 in separate funds to satisfy a community obligation and is owed reimbursement of $7,327.42.
As a result of these changes, we find that we must recalculate the division of the property between the parties. We thus amend the trial court judgment to reflect the following distribution of the property:

(A) ASSETS
 to Plaintiff to Defendant
value of assets awarded by trial court. ... $69,346.54 $60,089.00
credit to plaintiff for value of life insurance $14,067.00
policy she received in the partition __________
cash from CD (see C below) to defendant to $23,324.54
equalize distribution of assets __________
TOTAL.......................................... $83,413.54 $83,413.54
remaining cash in CD (see C below) divided $ 8,923.35 $ 8,923.35
equally between parties after reimbursement
claims are satisfied
TOTAL AWARDED IN DIVISION OF $92,336.89 $92,336.89
COMMUNITY ASSETS
(B) REIMBURSEMENT
 to Plaintiff to Defendant
as determined by the trial court.......... $ 6,164.00 $39,075.33
reimbursement plaintiff entitled to for separate $ 7,327.42
funds used to satisfy community loan __________
TOTAL.............................. $13,491.42 $39,075.33
(C) RECAP OF HOW FUNDS IN THE CERTIFICATE OF DEPOSIT CONTAINING
THE PROCEEDS FROM THE SALE OF COMMUNITY STOCK
WERE USED TO EQUALIZE THE DISTRIBUTION OF ASSETS AND TO
SATISFY THE PARTIES' REIMBURSEMENT CLAIMS
CD total................................. $93,738.00
amount to equalize defendant (see A above) - $23,324.54
amount to reimburse plaintiff (see B above) - $13,491.42
amount to reimburse defendant (see B - $39,075.33
above) __________
TOTAL remaining in CD to be divided (8,923.35 to
equally between the parties (see A above) $17,846.71 each)

*1050 THE STOCK
In her final assignment of error, plaintiff contends the trial court erred in finding that the sale of 110,000 community shares of stock in American Oilfield Divers, Inc. (hereafter American) by the defendant did not constitute fraud or bad faith management of community property.
Defendant is an employee of American, and the shares of stock at issue were acquired by defendant as compensation for his labor during the existence of the community regime. The certificates represented a total of 110,000 shares of stock which were issued to defendant periodically throughout the marriage. On January 10, 1984, defendant signed a restrictive agreement, drafted by American, which provided that in the event an employee separated from his spouse or quit working for the company, American could repurchase all shares of stock that had been issued to the employee at a per share price of ten cents for every year the person had been employed by American.
When presented with the agreement, defendant took it home and discussed it with plaintiff. She was fully aware of the terms of the agreement and only requested that defendant try to get an unrelated provision changed by American before he signed it. Defendant had the provision changed and then signed the agreement. When plaintiff and defendant were separated, plaintiff took possession of the stock certificates. Although American could have enforced the provisions of the agreement at this time and repurchased defendant's shares of stock, Mr. George C. Yax, president of American, decided to wait and give plaintiff and defendant a chance to reconcile their differences. (R. 530-531) After 3 years, during which time the re-purchase price of the stock shares rose by ten cents per year, American realized that plaintiff and defendant were definitely going through with the divorce. On April 12, 1990, American decided to enforce the restrictive agreement.
As defendant was not in actual possession of the stock certificates and was apparently unable to obtain them from plaintiff, American's board of directors issued a resolution cancelling the stock certificates in plaintiff's possession and reissuing the shares, which defendant then resold to American for a price of eighty cents per share, totalling $88,000.00. Although he put the proceeds from the sale into a Certificate of Deposit in the names of both parties and never touched them, defendant did not inform plaintiff of these actions. The CD had a value of $93,738.00 at the time of the trial.
Plaintiff asserts that defendant's transfer of the stock shares at a price less than the actual value of the stock constituted fraud or bad faith management of community property under La.C.C. art. 2354, and that defendant is therefore liable to plaintiff for her losses.
There is no question that the stock shares were community property because they were acquired by defendant as compensation for his labor during the existence of the community. Plaintiff was aware of the restrictive agreement and understood its terms. The trial court found that both plaintiff and defendant were bound by the restrictive agreement and although defendant did not tell plaintiff he had in fact sold the stock back to American under the terms of the agreement, he never concealed the proceeds of the sale.
The trial court further found that defendant had no intent to defraud plaintiff, and that he had acted in the interest of the community. Under the terms of the agreement, which plaintiff was fully aware of, defendant had no other choice than to sell the stock. Failure to disclose this transaction to plaintiff simply does not amount to fraud or bad faith by the defendant. Therefore, the judgment of the trial court denying plaintiff's claim for fraud or bad faith management of community property is affirmed.

CONCLUSION
For the foregoing reasons, the holdings of the trial court denying plaintiff reimbursement for separate funds used in the *1051 purchase of the community automobile and denying her claim for fraud or bad faith management of community property are affirmed. The trial court's judgment denying her claim for reimbursement for separate funds used to purchase the life insurance policy for the minor son is reversed. We find that the policy constituted a community asset in this case, as stipulated by the parties. We also find that plaintiff is entitled to reimbursement in the amount of $3,663.71 for separate funds used to pay off the community loan. We therefore amend the trial court judgment as to the distribution of community property to reflect a credit to plaintiff's portion of community assets for the value of the life insurance policy, to reflect the reimbursement plaintiff is due, and to reflect the redistribution of the community funds in the CD so as to achieve an equal division of the community assets.
Costs of this appeal are assessed to both parties equally.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.
APPENDIX

LORETTA H. LANDRY
Computation of Separate/Community Portion of Certificate of Deposit (CD)
 (All principal withdrawals deducted from Separate Portion)
 (___________Credit/(Debit)__________)
 ( )
 ( ) Balance in
Date Event ( Amount Community Separate ) CD Account
-------------------------------------------------------------------------------------------
8/12/78 Balance at Marriage $25,000.00 $25,000.00
1/1/79 Interest Withdrawn
1/2/79 CD #01857 $25,000.00
1/1/80 Interest on above CD $2,062.50 $2,062.50 $27,062.50
1/1/80 CD #02189 $27,062.50
8/1/80 Interest on above CD $1,789.00 $1,789.00 $28,851.50
8/1/80 CD #02343 $28,851.50
1/30/81 Interest on above CD $1,259.07 $1,259.07 $30,110.57
1/30/81 CD # 3013308 $30,110.57
7/31/81 Interest on above CD $2,157.66 $2,157.66 $32,268.23
7/31/81 Purchase of Mercedes ($12,000.00) ($12,000.00) $20,268.23
7/31/81 CD #3016612 $20,268.23
1/29/82 Interest on above CD $1,519.97 $1,519.97 $21,788.20
1/29/82 From Loretta's Savings $591.59 $591.59 $22,379.79
1/29/82 Sale of Corvette (12/81) $5,000.00 $5,000.00 $27,379.79
1/29/82 CD #3382 $27,379.79
7/30/82 Interest on above CD $1,881.30 $1,881.30 $29,261.09
7/30/82 Transfer to Savings ($3,000.00) ($1,881.30) ($1,118.70) $26,261.09
 (Deposit on 8/2/82)
7/30/82 CD #3806 $26,261.09
1/28/83 Interest on above CD $1,596.22 $1,596.22 $27,857.31
1/28/83 Transfer to Checking ($2,500.00) ($1,596.22) ($903.78) $25,357.31
 (Deposit on 1/31/83)
1/28/83 CD #4201 $25,357.31
7/29/83 Interest on above CD $1,061.33 $1,061.33 $26,418.64
7/29/83 Transfer to Checking ($1,500.00) ($1,061.33) ($438.67) $24,918.64
 (Deposit on 8/1/83)
7/29/83 CD #4760 $24,918.64
1/29/84 Interest on above CD $1,187.32 $1,187.32 $26,105.96
1/29/84 Transfer to Checking ($1,500.00) ($1,187.32) ($312.68) $24,605.96
 (Deposit on 2/2/84)
1/29/84 CD # 5041 $24,605.96
7/24/84 Interest on above CD $1,101.25 $1,101.25 $25,707.21
7/24/84 Transfer to Checking ($4,000.00) ($1,101.25) ($2,898.75) $21,707.21
 (Deposit on 8/6/84)

*1052
7/24/84 CD #5314 $21,707.21
1/25/85 Interest on above CD $1,160.82 $1,160.82 $22,868.03
1/25/85 Transfer to Savings ($500.00) ($500.00) $22,368.03
 TOTALS $15,040.61 $7,327.42 $22,368.03
1/25/85 At this point this account was divided into two CD's.
 The interest on both was rolled over and interest and principal were combined to purchase
 a single CD on 1/24/86.
1/24/86 Interest on above CD's $1,907.00 $1,907.00 $24,275.03
1/24/86 CD #6147 $24,275.03
4/11/86 Loan to buy Ryan's policy
7/24/86 Interest on above CD $938.06 $938.06 $25,213.09
7/24/86 Loan Payoff ($24,955.86) ($17,628.44) ($7,327.42) 257.23
 TOTALS $257.23 $0.00 $257.23
7/24/86 Transfer to Ryan's MMIA ($257.23) ($257.23) $0.00
MINIMUM CONTRIBUTION BY SEPARATE ESTATE
TO RYAN'S INSURANCE POLICY $7,327.42
 ----------