30 So.3d 796 (2009)
The Succession of William Edward FAGET.
Pier Marie Faget Jenkins, as the Independent Administratrix of the Succession of William Edward Faget
v.
Audrey Menard Faget.
Nos. 2008 CA 2422, 2008 CA 2423.
Court of Appeal of Louisiana, First Circuit.
December 23, 2009.
*797 Pierre V. Miller, II, Patrick Miller, New Orleans, Louisiana, and Albert J. Derbes, III, Eric J. Derbes, Metairie, Louisiana, for Plaintiffs/Appellants, Pier Marie Faget Jenkins, individually and as independent administratrix of the Succession of William E. Faget, Sr., Vivian Adelaide Faget and William Edward Faget, Jr.
Harry P. Pastuszek, Jr., David S. Pittman, Linnette C. Goodly, Covington, Louisiana, for Defendant/Appellee, Audrey Menard Colomb Faget.
Before PARRO, GUIDRY, DOWNING, McCLENDON and WELCH, JJ.
McCLENDON, J.
Pier Marie Faget Jenkins, individually and as independent administratrix of the Succession of William E. Faget, Sr., Vivian Adelaide Faget, and William E. Faget, Jr. (the Faget children) appeal the judgment of the trial court, which granted the motion for partial summary judgment filed by Audrey Menard Faget, denied the Faget children's motion for summary judgment, and declared Audrey Faget a one-half owner in indivision of the family home and its furnishings. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
Dr. William E. Faget married Audrey Menard Faget on December 22, 1977. Audrey Faget was Dr. Faget's second wife. On December 15, 1977, prior to their marriage, they entered into a matrimonial agreement in which they agreed to remain separate in property.[1] Dr. Faget remained *798 married to and continued to reside with Audrey Faget until his death on May 12,2003.[2]
In late November 1992, Dr. Faget suffered a stroke, was taken to St. Tammany Parish Hospital, and was admitted into the intensive care unit. While in the hospital, on November 30, 1992, Dr. Faget signed a living will and a power of attorney in favor of Audrey Faget. Also, on November 30, 1992, Dr. Faget and Audrey Faget executed a document entitled "Residence Agreement," by authentic act, regarding the family home and its furnishings. At the time the residence agreement was executed, the family home was the separate immovable property of Dr. Faget. The agreement provided that it was the intention and wish of the parties that the residence and its furnishings be treated as community property. The residence agreement was not filed into the public records until September 5, 2003, after Dr. Faget's death.
Dr. Faget was survived by three adult children from his first marriage. On July 8, 2003, the Faget children filed a petition to open the succession of their father and for the appointment of Pier Marie Faget Jenkins as independent administratrix. Thereafter, on January 13, 2005, Pier Marie Faget Jenkins, as the independent administratrix of the Succession of William E. Faget, filed a petition for a revendicatory action against Audrey Faget, seeking to be declared owner of the property in question and seeking an order compelling Audrey Faget to account for and deliver said property. On April 22, 2005, the revendicatory action was transferred to and consolidated with the succession proceeding.
On October 21, 2005, Audrey Faget filed a motion for partial summary judgment in the consolidated proceedings seeking to enforce the provisions of the residence agreement and seeking a judgment declaring that she owned one-half of the family residence and one-half of its furnishings. Thereafter, the Faget children filed a cross-motion for summary judgment attacking the validity of the residence agreement. On April 5, 2006, the trial court heard oral arguments on the cross-motions for summary judgment. The trial court issued reasons for judgment on April 25, 2006, and signed a judgment in the succession proceeding, on May 9, 2006, granting the motion for partial summary judgment filed by Audrey Faget and denying the Faget children's motion for summary judgment. The court further declared Audrey Faget the owner in indivision of one-half of the family residence and one-half of all furnishings therein since November 30, 1992. Additionally, the trial court declared Audrey Faget to be the usufructuary for life over the remaining one-half of the immovable property and its furnishings, since May 12, 2003, with the Faget children being the naked owners of the remaining one-half, subject to the usufruct of Audrey Faget. The Faget children appealed from this judgment.
On September 19, 2007, this court dismissed the appeal for lack of jurisdiction, *799 finding that the judgment at issue was not designated as a final judgment for purposes of appeal, pursuant to LSA-C.C.P. art. 1915 B. In re Succession of Faget, 06-2159, 06-2160 (La.App. 1 Cir. 9/19/07), 984 So.2d 7. On July 14, 2008, pursuant to a motion to designate the judgment as final, the trial court issued reasons for judgment granting the motion and designating the judgment as final. Judgment was signed on August 4, 2008, and the Faget children appealed.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." LSA-C.C.P. art. 966 A(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Walker v. Phi Beta Sigma Fraternity (Rho Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
A matrimonial regime is a system of principles and rules governing the ownership and management of the property of married persons as between themselves and toward third persons. LSA-C.C. art. 2325. A matrimonial regime may be legal, contractual, or partly legal and partly contractual. LSA-C.C. art. 2326. The legal regime is the community of acquets and gains. LSA-C.C. art. 2327. In a community of acquets and gains regime, each spouse owns a present undivided one-half interest in the community property. LSA-C.C. art. 2336. A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect. LSA-C.C. art. 2328. Additionally, LSA-C.C. art. 2329 provides, in pertinent part:
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
In this matter, the Faget children initially argue that the trial court erred in granting summary judgment as a matter of law in favor of Audrey Faget because court approval was required for the residence agreement to be legally effective. Specifically, the Faget children contend *800 that the residence agreement obviously was an attempt to modify the previous contractual regime of Dr. Faget and Audrey Faget and was not a total adoption of the legal regime. Therefore, according to the Faget children, court approval of the residence agreement was required pursuant to LSA-C.C. art. 2329, and because it was not obtained, the attempt to modify the matrimonial regime by the residence agreement was invalid. Audrey Faget argues, however, that the residence agreement validly modified the matrimonial regime and any assertion that court approval was required is simply incorrect. She asserts that LSA-C.C. art. 2329 clearly permits parties to modify a separate property regime to create, in whole or in part, a legal regime without prior court approval. Alternatively, she asserts that the residence agreement was a donation pursuant to LSA-C.C. art. 2343.1.
Clearly, the residence agreement expressed an intent and desire to treat only the family home and its furnishings as community property. In all other respects, the matrimonial regime established by Dr. Faget and Audrey Faget prior to their marriage was to remain in effect. Thus, all other assets were to remain the separate property of Dr. Faget or Audrey Faget. Therefore, the agreement sought to establish a mixed regime, partly legal and partly contractual, as defined in LSA-C.C. art. 2326. Hence, the issue before us is whether the residence agreement herein, which applies to only some of the spouses' assets, modified the separate property regime that existed between Dr. Faget and Audrey Faget or subjected them to a legal regime as set forth in LSA-C.C. art. 2329.
The legislature in enacting LSA-C.C. art. 2329 specifically provided that spouses can enter into a matrimonial agreement that modifies or terminates a matrimonial regime during their marriage but only upon joint petition and a finding by the court that it serves their best interests and that they understand the governing principles and rules.[3] However, the legislature permitted spouses to subject themselves to the legal regime by a matrimonial agreement at any time without court approval. Article 2329 is clear and unambiguous. The legislature created three specific categories of matrimonial regimes and designated only one of those three as not requiring court approval during marriage. Thus, because the residence agreement in this matter sought to establish a partly legal and a partly contractual regime, court approval was necessary under Article 2329.
Nonetheless, Audrey Faget cites the cases of O'Krepki v. O'Krepki, 529 So.2d 1317 (La.App. 5 Cir.), writ denied, 532 So.2d 767 (La.1988), and Martello v. Martello, 06-0594 (La.App. 1 Cir. 3/23/07), 960 So.2d 186, in support of her argument that court approval was not necessary. However, we find these cases to be clearly distinguishable. Unlike the facts in the O'Krepki and Martello decisions, the present matter is not one in which the parties wished to terminate their contractual matrimonial regime in order to establish the legal regime of a community of acquets and gains. The residence agreement in this case attempted to remove only the family home and its furnishings from the contractual regime of separation of property and transform them into community assets. Otherwise, the parties were to remain separate in property.
Audrey Faget makes the alternative argument that the residence agreement *801 was a donation by one spouse to another pursuant to LSA-C.C. art. 2343.1. Article 2343.1 provides:
The transfer by a spouse to the other spouse of a thing forming part of his separate property, with the stipulation that it shall be part of the community, transforms the thing into community property. As to both movables and immovables, a transfer by onerous title must be made in writing and a transfer by gratuitous title must be made by authentic act. (Emphasis added.)[4]
In all cases referring to Article 2343.1, a community property regime already existed. See, e.g., Smith v. Smith, 95-0913 (La.App. 1 Cir. 12/20/96), 685 So.2d 649; Succession of Davis, 496 So.2d 549 (La. App. 1 Cir.1986). See also Goines v. Goines, 08-42 (La.App. 5 Cir. 6/19/08), 989 So.2d 794; In re Succession of Allen, 05-0745 (La.App. 4 Cir. 1/4/06), 921 So.2d 1030; Landry v. Landry, 610 So.2d 1045 (La.App. 3 Cir.1992). In this matter, the spouses contracted out of a community property regime prior to their marriage. We cannot find that the residence agreement amounted to a donation that "shall be part of the community" of acquets and gains pursuant to LSA-C.C. art. 2343.1, where no community existed. It was the choice of the legislature to use "the community" as opposed to "a community." Our interpretation of Article 2343.1 requiring the existence of a community of acquets and gains in order to donate to the community, is consistent with LSA-C.C. art. 2329. Otherwise, LSA-C.C. art. 2343.1 could be used to circumvent the requirement of court approval for matrimonial agreements which modify the matrimonial regime. We do not believe that was what the legislature intended. Accordingly, we find this argument to be without merit.[5]
Because we conclude that the modification of the contractual regime of separation of property by the residence agreement did not subject Dr. Faget and Audrey Faget to a total legal regime, as contemplated by LSA-C.C. art. 2329, we find that court approval was required. Unquestionably, said court approval was not sought nor was any evidence presented that court approval was obtained. Consequently, the residence agreement did not meet the requirements necessary for a matrimonial agreement to be valid as set forth in Article 2329 and cannot be recognized as such. Additionally, the residence agreement was not a donation under LSA-C.C. art. 2341.1, as there was no existing legal regime. Accordingly, we conclude the trial court erred in granting summary judgment in favor of Audrey Faget.

CONCLUSION
For the above and foregoing reasons, the August 4, 2008 judgment in favor of Audrey Faget is reversed. This matter is remanded for further proceedings. Costs of this appeal are assessed to Audrey Faget.
REVERSED AND REMANDED.
*802 WELCH, J., dissents and assigns reasons.
DOWNING, J., dissents.
WELCH, J., Dissenting.
I respectfully disagree with the majority opinion in this case and would affirm the judgment of the trial court. Essentially, the majority concludes that the residence agreement is not enforceable because it is a matrimonial agreement that sought to modify the parties' existing contractual separate property regime, and pursuant to La. C.C. art. 2329, required a finding by the court that the modification served their best interest and that the parties understood the governing principles and rules. I believe the majority's decision in this regard is legally incorrect.
Louisiana Civil Code article 2329 provides in pertinent part as follows:
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interest and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
In order to conclude, as the majority has done, that court approval of the residence agreement was necessary, the residence agreement must be classified, under La. C.C. art. 2329, as "a matrimonial agreement that modifies or terminates a matrimonial regime." A matrimonial regime is defined in La. C.C. art. 2325 as a "system of principles and rules governing the ownership and management of property of married persons." The reference to "system" contemplates a "methodic arrangement of rules rather than an isolated or single transaction." Spaht and Hargrove, Matrimonial Regimes, § 8.6 at 788, 16 Louisiana Civil Law Treatise (2007). Thus, a matrimonial agreement requiring judicial approval "is the kind of agreement that affects the classification and management of future acquisitions." Id.
In this case, the residence agreement provided as follows:
[i]t has been the intention and wish of each appearer that though separate in property per [m]arriage [c]ontract dated December 15, 1977, the residence be treated as community, and that in the event of the death of either party, that individual 50% interest in the residence and all furnishings is to be inherited by that individuals' children.
Therefore, the effect of the residence agreement was limited to a single asset, which was already owned by Dr. Faget, and thus was an isolated transaction. It did not establish any rules regarding the classification and management of any future assets. Accordingly, I do not believe that the residence agreement was a matrimonial agreement that modified the parties' matrimonial regime.
Furthermore, even if the residence agreement could be construed as a matrimonial agreement, La. C.C. art. 2329 provides that spouses may "subject themselves to the legal regime at anytime without court approval." If spouses may subject themselves to the legal regime, in its entirety, at any time without court approval, then logically, it follows that they may subject a specific asset to the legal regime without court approval, i.e. the greater includes the lesser.
Lastly, at the very least, I believe that the residence agreement meets the definition of a donation by one spouse under La. C.C. art. 2343.1. The majority reasons that the residence agreement cannot be a donation to the community under La. C.C. art. 2343.1 as a community property regime *803 must already exist in order for that article to apply. However, I do not see any such requirement under the specific terms of that article. All the article requires is that the thing to be transferred form part of the spouse's separate property and, and if the transfer is by onerous title, it must be in writing, and if the transfer is by gratuitous title, it must be made by authentic act. There is no dispute that prior to the execution of the residence agreement, the residence was Dr. Faget's separate property. The residence agreement clearly demonstrated Dr. Faget's intent that his separate residence be treated thenceforth as a community asset and the residence agreement was made an authentic act. Thus, the residence agreement meets the requirements of La. C.C. art. 2343.1.
Thus, I respectfully dissent.
NOTES
[1] While we note that the 1977 matrimonial agreement was not made part of the record in this matter, it is undisputed that Dr. Faget and Audrey Faget contracted to remain separate in property. Further, portions of the deposition of Audrey Faget, submitted in support of the Faget children's motion for summary judgment, show that Dr. Faget and Audrey Faget "would be separate and apart in [their] finances." When asked if there were any ways in which she and Dr. Faget did not keep their finances separate, Audrey Faget testified that she and Dr. Faget filed their income taxes together. She stated that if one spouse had a loss for income tax purposes, the other spouse would claim the loss to offset the gains of the other spouse. Audrey Faget also testified that she and Dr. Faget had made investments together, but those investments were all completed prior to his death. Each spouse had their own separate checking accounts, savings accounts, and stock portfolios. Audrey Faget testified that one of her checking accounts had Dr. Faget's name on it and was the account he put $500 in as a monthly allowance for Audrey Faget to spend on general household expenses. In all other respects, Audrey Faget testified that they remained separate and that the immovable property on which the house in question was built was acquired by Dr. Faget before they married and was titled separately in his name.
[2] Dr. Faget died intestate.
[3] Louisiana Civil Code article 2329 was enacted by 1979 La. Acts, No. 709, § 1, effective January 1, 1980.
[4] Article 2343.1 was added by 1981 La. Acts, No. 921, § 2, and clarifies the law. See Revision Comment (a). Revision Comment (b) provides:

Under this article, a spouse may convey to the other spouse a thing that forms part of the transferor's separate property, with the stipulation that the thing shall be part of the community. The thing may be a thing that the transferor owns as sole owner or an undivided interest. In effect, the transferor conveys to the other spouse one-half of what he owns and retains the other half as co-owner under the regime of acquets and gains.
[5] As no issue was raised as to whether the residence agreement was a donation other than a donation to the community under LSA-C.C. art. 2343.1, we do not address that issue.