685 So.2d 649 (1996)
Lionel Lorio SMITH
v.
Kathleen Hebert SMITH.
No. 95 CA 0913.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
*650 Jack M. Dampf, Kathleen R. Callaghan, Dampf & Edwards, L.L.P., Baton Rouge, for Lionel Lorio Smith.
Lauren J. Davis, Hannah, Colvin & Pipes, L.L.P., Baton Rouge, for Kathleen Hebert Smith.
Before SHORTESS, PARRO, and KUHN, JJ.
PARRO, Judge.
Lionel Lorio Smith ("Lionel") appealed the trial court's judgment in an action to partition the community property which existed between him and his former wife, Kathleen Hebert Smith ("Kathleen"). For the following reasons, this court affirms in part and reverses in part.

Facts and Procedural History
Lionel and Kathleen were married in 1970 and divorced by judgment signed on October 23, 1992. The community was dissolved retroactively to February 5, 1992, the date of the filing of the petition for divorce. On December 17, 1992, Lionel filed a petition for the partition of the community property and for a declaratory judgment. On December 6, 1993, Lionel filed a sworn detailed descriptive list of each community asset and liability. This pleading also identified Lionel's separate property and urged his claims for reimbursement. Of relevance in this appeal are his claims for reimbursement for separate funds used in the purchase of the first family home and for post-February 5, 1992, payments of premiums on the Lincoln National Life Insurance policy ("the Lincoln policy"). Kathleen was ordered by the court to file her detailed descriptive list and to traverse or concur in Lionel's descriptive list within 60 days of December 6, 1993. Within this sixtyday period, Kathleen filed an answer and reconventional demand with a traversal of his detailed descriptive list. Pursuant to the trial court's grant of additional time, she filed a sworn detailed descriptive list on March 1, 1994, which classified as community the interest in equipment belonging to the Baton Rouge Eye, Ear, Nose & Throat Clinic. In this pleading, she also made a claim for reimbursement for separate funds used to purchase furnishings for the family home.
*651 Lionel filed a traversal of her detailed descriptive list on May 3, 1994, in which he denied that Kathleen had any interest in Baton Rouge Eye, Ear, Nose & Throat Clinic's equipment. On September 19, 1994, Kathleen filed an amended detailed descriptive list, adding to her list of community movables and separate property.
A preliminary hearing had been held on April 4, 1994, to determine if certain items listed on Lionel's descriptive list belonged to the community. A judgment was signed on May 5, 1994, with respect to the limited issues presented at the April hearing. After a second hearing was conducted on September 14 and 19, 1994, on the petition to partition the community, the trial court rendered a judgment declaring that certain assets belonged to the former community (including the Lincoln policy and the proceeds of the sale of a one-half ownership interest in the Baton Rouge Eye, Ear, Nose and Throat Clinic), declaring certain debts to be community (including both parties' legal expenses), recognizing Lionel's entitlement to reimbursement on various items, and recognizing Kathleen's entitlement to reimbursement on various items. This judgment also partitioned the community and ordered Lionel to make an equalizing payment to Kathleen in the amount of $13,129.29.
From this judgment, Lionel appealed, contending the trial court erred in (1) refusing to recognize his claim for reimbursement for the use of his separate funds in making the down payment on the first family home, (2) recognizing Kathleen's right to reimbursement for her separate funds claimed to have been used to purchase furnishings for the family home, (3) refusing to recognize his reimbursement claim for the post-community payments with his separate funds to maintain a whole life insurance policy belonging to the community, (4) declaring that the interest he received in the medical clinic as an inter vivos donation from his parents belonged to the community, and (5) allowing Kathleen to amend her detailed descriptive list during the trial of this matter to add a claim for attorney's fees incurred prior to the divorce.[1]

Standard of Review
The appellate court's review of facts is governed by the manifest errorclearly wrong standard. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. Medline Industries, Inc. v. All-Med Supply & Equipment, 94-1504, p. 4 (La.App. 1st Cir. 4/7/95), 653 So.2d 830, 832; O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1st Cir.1990).

Applicable Law
Under Louisiana law, property is generally characterized as either community or separate. LSA-C.C. art. 2335. The classification of property as separate or community is fixed at the time of its acquisition. Terry v. Terry, 565 So.2d 997, 999 (La.App. 1st Cir.1990). In proving whether an asset is community or separate, the parties are guided by the following principles.
LSA-C.C. art. 2338 provides that community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of *652 community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property. Things in the possession of a spouse during the existence of the community are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. art. 2340.
Regarding the classification of property as separate, LSA-C.C. art. 2341 provides, in part, that a person's separate estate comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; and property acquired by a spouse by inheritance or donation to him individually. In order to transfer separate property to the community with the stipulation that it shall be part of the community, a transfer by onerous title must be made in writing or a transfer by gratuitous title must be done by authentic act. LSA-C.C. art. 2343.1.

Lionel's Claims for Reimbursement
Lionel contended the trial court erred in failing to recognize his right to reimbursement for the use of his separate funds to make a down payment on the first family home and to maintain premium payments on the Lincoln policy following the termination of the marriage.

A. Down Payment on the First Family Home
Kathleen admitted Lionel had used his separate funds in the acquisition of their first home, which was community property. Even the trial court believed Lionel had sold his separate stock and used the proceeds for the down payment on the first home. Although Lionel claimed in his detailed descriptive list that he expended approximately $50,000 of his separate funds toward the purchase of the home, his list of reimbursements introduced at trial itemized the amount expended at only $11,000, which coincided with the amount withdrawn from Lionel's separate passbook savings account on May 28, 1975 (the date the first home was purchased). Although no other specific evidence of this amount was introduced at trial, there is nothing in the record to indicate the parties disputed the amount of separate funds expended.
Following the sale of the first home, the proceeds were placed into an account and later used to acquire the family's replacement home. The trial court concluded that the sale of the community asset resulted in a contribution to the community of the separate funds used in acquiring the first home.[2] Such a finding presupposes the separate identity of the funds expended in acquiring the first home was reestablished after the sale of the first home. We disagree. Under the principle of real subrogation, which is applicable to both separate and community property, the funds derived from the sale of the first home remained community property.[3]See LSA-C.C. art. 2341, comment (c); Albert v. Albert, 625 So.2d 765, 768 (La.App. 1st Cir.1993).
The parties do not dispute that the first home belonged to the community and that Lionel's separate funds were used for the acquisition of this community property. Since Lionel used his separate funds in acquiring community property, obviously, he would have had a claim for reimbursement for the use of his separate funds pursuant to LSA-C.C. art. 2367. Thus, the issue presented to this court is whether Lionel's right to reimbursement was affected as a result of the subsequent sale of the first home. We think not.
Under LSA-C.C. art. 2367, a spouse is entitled to reimbursement upon proof that *653 his or her separate property was "used for the acquisition, use, improvement, or benefit of community property." The right to reimbursement is not peculiar to any particular property or its proceeds. Thus, Lionel's right to reimbursement was not affected by the sale of the first home. Therefore, the trial court was legally incorrect in denying Lionel's right to reimbursement under LSA-C.C. art. 2367 for the use of his separate property in the acquisition of community property. Accordingly, Lionel is entitled to reimbursement from Kathleen in the amount of $5,500.[4]

B. Payment of Life Insurance Premiums
Lionel sought reimbursement for one-half of the total amount of the separate funds used to pay the premiums on the Lincoln policy after the termination of the community. He submits the trial court erred in refusing to recognize his right to be reimbursed for separate funds used to pay premiums on a community whole life insurance policy with a substantial cash surrender value after the dissolution of the community. His list of reimbursements disclosed that he expended $5,012.63 of his separate funds after February 5, 1992, to pay the premiums on the Lincoln policy.
Whether a life insurance policy is the separate property of the insured, or belongs to the community existing between the insured and his or her spouse, is determined by the marital status of the insured at the time the policy is issued. Berry v. Metropolitan Life Insurance Company, 327 So.2d 521, 523 (La.App. 1st Cir.), writ denied, 329 So.2d 760 (La.1976). Furthermore, we note there is a clear distinction between the ownership of a policy of life insurance and the right to receive the proceeds of a life insurance policy after the death of the insured. Kambur v. Kambur, 94-775, p. 6 (La.App. 5th Cir. 3/1/95), 652 So.2d 99, 103.
The trial court found the policy was community property, and Kathleen admitted the policy was issued during the marriage and was community property at the time of issuance. However, Kathleen argues the obligation to pay the premiums on this admitted community asset ceased to be a "community" obligation when Lionel changed the beneficiary from Kathleen to his present wife. Kathleen's argument overlooks the fact that this policy has a substantial cash surrender value which benefits the former community. Thus, the classification of this policy as a community asset did not change when the beneficiary designation was altered. Since this policy remained a valuable community asset, the payment of the premium continued to be a community obligation, and Lionel is entitled to reimbursement for onehalf of his separate funds used to pay it. LSA-C.C. art. 2365. Therefore, the trial court was legally incorrect in its conclusions of law which resulted in the denial of Lionel's claim for reimbursement. Accordingly, Lionel is entitled to reimbursement from Kathleen in the amount of $2,506.31.[5]

Kathleen's Reimbursement Claim
Lionel contends the trial court erred in awarding Kathleen reimbursement for separate funds allegedly used to purchase family furnishings. Kathleen argues that she received funds from an inheritance totaling $8,244.67 by way of negotiable instruments dated August 8, 1990, and November 2, 1990. The August 8, 1990, money order in the amount of $4,119.67 was payable to Kathleen H. Smith and had the following notation on the bottom left corner: "Mrs. Joyce H. Thibodaux [testatrix] of the Succession Of Mrs. Lillian S. Hebert." The reverse side of this money order was endorsed by Kathleen. The November 2, 1990, check in the amount of $4,125 was payable to Kathleen H. Smith, Milton John Thibodaux, Sr. and Joyce Hebert Thibodaux. The face of this check did not contain a reference regarding the nature of this payment. The rear of this check was endorsed by Milton John Thibodaux, Joyce Hebert Thibodaux, and then by Kathleen.
*654 Kathleen testified that upon receipt and endorsement of these negotiable instruments, she gave both of them to Lionel to defray some of the costs of their home furnishings. Lionel did not present evidence to dispute this testimony. The trial court apparently found Kathleen's testimony to be credible.
Based on the evidence presented and the credibility determinations of the trial court, this court concludes there was a reasonable factual basis for the trial court's determination that Kathleen had used separate funds acquired by inheritance and/or donation in the amount of $8,244.67 for the acquisition of community home furnishings. Based on our review, this court further finds the record establishes the factual determination of the trial court was not manifestly erroneous, and its legal conclusion regarding her right to reimbursement was correct.

Classification of the Proceeds and Promissory Note Exchanged for the Medical Clinic Stock
Over a period of time beginning in 1983, Lionel's parents made inter vivos donations of shares of stock in their medical clinic (Smith, Ltd., A Professional Medical Corporation) to Lionel and his brother. The medical clinic was reincorporated under the name of The Baton Rouge Eye, Ear, Nose & Throat Clinic, Ltd. (A Professional Medical Corporation) in 1985 after the original charter had been revoked by the Louisiana Secretary of State's office for failure of the corporation to maintain its annual reports. When he departed from the clinic's employ in 1990, Lionel sold all of his shares of stock to the clinic for $27,434.29. A promissory note for this amount payable to Lionel was signed by The Baton Rouge Eye, Ear, Nose & Throat Clinic, Ltd. (A Professional Medical Corporation) for the stock purchase. The note provided for monthly payments in the amount of $500 beginning on August 10, 1990. It is the classification of this credit sale and the promissory note that is at issue.
In support of her argument that the proceeds and note are community property, Kathleen referred to the articles of incorporation dated October 22, 1985. Since the clinic was reincorporated during the existence of the marriage, she argued that any ownership interest in the clinic after reincorporation was community. On the other hand, Lionel contends the entity incorporated in 1985 ("the 1985 corporation") was essentially identical to the entity whose stock he received from his parents although it had changed names, in that it owned the same assets, used the same checkbooks, used the same tax identification number, employed the same employees, and conducted business in the same fashion as the original corporation. Kathleen does not take issue with these facts.
When the stock in the clinic was originally obtained by Lionel, it became his separate property because it was acquired by donation to him individually. See LSA-C.C. art. 2341. As a stockholder in the former corporation, Lionel had no direct ownership interest in the assets of the corporation. As a separate entity, distinct from its shareholders, the corporation was the owner of the clinic's assets. LSA-C.C. art. 24 and comment (d); LSA-R.S. 12:1 et seq.; Levert v. Shirley Planting Co., 135 La. 929, 66 So. 301 (1914); Succession of Mydland, 94-0501, p. 4 (La.App. 1st Cir. 3/3/95), 653 So.2d 8, 11; Richard v. Morgan, 433 So.2d 263, 264 (La.App. 1st Cir.), writ denied, 438 So.2d 1108 (La.1983).
Applying the principle of real subrogation to Lionel's separate ownership of stock in Smith, Ltd., A Professional Medical Corporation, we conclude the mass of Lionel's separate property was not diminished when the stock in the former corporation was converted to stock in the 1985 corporation. The stock in the new corporation simply took on the same classification as the stock Lionel held in the former corporation. See Albert v. Albert, 625 So.2d at 768-769; Succession of Davis, 496 So.2d 549, 552 (La.App. 1st Cir. 1986).
Based on the evidence presented, and considering the absence of evidence showing that the consideration given in the acquisition of stock in the 1985 corporation was community property, we conclude the dissolution of the former corporation and the 1985 reincorporation of that business entity would not have affected the separate nature of Lionel's *655 stock ownership.[6]See Lane v. Lane, 375 So.2d 660, 666-667 (La.App. 4th Cir.1978), writs denied, 381 So.2d 1222 (La.1980). The trial court erred in finding otherwise. Thus, when Lionel sold his stock in the 1985 corporation, the sale proceeds and promissory note took the place of the stock as his separate property and do not constitute an asset of the former community. See Albert v. Albert, 625 So.2d at 769.

Timeliness of Modifications of the Detailed Descriptive List
The trial court awarded the legal fees of both parties as submitted. Lionel contended that the attorney's fees expended by Kathleen in obtaining her divorce should not be included as a community liability in the judgment of disposition since she failed to include this item in her detailed descriptive list and her amended list.
LSA-R.S. 9:2801 sets forth the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage. It is well settled that a trial court has broad discretion in adjudicating issues raised in a proceeding for partition of the community regime. Kambur v. Kambur, 94-775 at 3-4, 652 So.2d at 101-102; Queenan v. Queenan, 492 So.2d 902, 914 (La.App. 3rd Cir.), writ denied, 496 So.2d 1045 (La. 1986); Mathews v. Mathews, 457 So.2d 746 (La.App. 2nd Cir.1984). Although this statute provides the time periods for filing detailed descriptive lists and traversals, courts are required to permit amendments to the detailed descriptive lists. LSA-R.S. 9:2801(1)(b). Courts have used their discretionary powers to allow amendment of these pleadings at various stages during the proceeding (even on appeal). See Washington v. Washington, 493 So.2d 1227, 1234 (La.App. 2nd Cir.1986) (in which the appellate court amended the trial court's judgment of partition to include certain community debts which were proven at trial, even though they had not been listed in the plaintiff's detailed descriptive list).
Prior to trial, Kathleen was served with an order directing her to file her traversal, which is the manner contemplated by LSA-R.S. 9:2801 to establish the issues for trial. Kathleen filed her traversal of the list filed by Lionel as well as her detailed descriptive list. In response to Kathleen's detailed descriptive list, Lionel filed a traversal which listed as a community liability his attorney's fees and costs in the action for divorce incurred before the date of the judgment of divorce (October 16, 1992). Following the April 1994, hearing and the filing of Lionel's traversal, Kathleen amended her original detailed descriptive list. In none of her pleadings did she identify her attorney's fees as a community obligation or make a request for reimbursement regarding these expenses.
LSA-C.C. art. 2362.1 provides that attorney's fees and costs in an action for divorce incurred before the date of the judgment of divorce that terminates the community property regime are debts of the community. Lionel obviously was aware that Kathleen's attorney's fees would also be a debt of the community when he prepared his traversal. This court fails to see how Lionel was prejudiced as a result of the trial court's recognition of Kathleen's attorney's fees as a community liability. See LSA-C.C.P. art. 1154. A refusal by the trial court to allow amendment of the detailed descriptive list to add her attorney's fees would not have altered the community's obligation for such a debt. On appeal, Lionel does not complain about the amount of attorney's fees allegedly expended by Kathleen. This court notes that Lionel's attorney's fees were considerably more than the amount submitted by Kathleen. Under the facts of this case, we conclude the trial court did not abuse its discretion in allowing Kathleen to amend her detailed descriptive list to include this community liability.

Decree
For the foregoing reasons, the judgment of the trial court is reversed in part and affirmed *656 in part. Costs of this appeal are assessed to both parties equally.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] The complexity of the matters on appeal, combined with the lack of record evidence due to the procedures utilized by the trial court, make this case extremely difficult to review. Nonetheless, we note the facts of this case are generally not in dispute. This appeal focuses primarily on the classification of certain property and the determination of certain reimbursement claims.
[2] There is no evidence that the requirements of LSA-C.C. art. 2343.1 were ever satisfied. Therefore, the separate funds of Lionel were never given to the community. See Landry v. Landry, 610 So.2d 1045, 1047 (La.App. 3rd Cir.1992).
[3] There is no codal authority to support a finding that the funds derived from the sale of a community asset is part community and part separate based on the original classification of the things used to acquire the community asset.
[4] However, Kathleen's liability for one-half of the funds used would be limited to the value of her share in the community after deduction of all community obligations. LSA-C.C. art. 2367.
[5] However, Kathleen's liability would be limited to the value of her share in the community after deduction of all community obligations. LSA-C.C. art. 2365.
[6] If an individual's equity position in a corporation (i.e. his stock ownership) is replaced with a similar equity interest in a succeeding corporation or partnership, real subrogation occurs and the new interest remains a separate asset. See Spaht & Hargrave, Matrimonial Regimes § 3.39 at 115-116.