MARIA DENISE ETTER
v.
BRIAN KEITH JOHNSTON.
No. 2007 CA 0078.
Court of Appeals of Louisiana, First Circuit.
November 2, 2007.
JAMES J. ZITO, Attorney for Plaintiff-Appellee, MARIA DENISE ETTER.
HARRY L. SHOEMAKER, III, Attorney for Defendant-Appellant, BRIAN KEITH JOHNSTON.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
A former spouse appeals a judgment that partitions community property, challenging the trial court's classification of certain assets and liabilities, which impacted his ex-spouse's claim for reimbursement. For the following reasons, we amend and, as amended, affirm.

Factual Background and Procedural History
Maria Denise Etter (Etter) and Bryan Keith Johnston (Johnston) were married on February 16, 1991, and divorced on October 18, 1999. Following their separation, Johnston lived in the marital domicile and allegedly continued to pay the monthly mortgage payment of $550. In April 2001, Etter filed a petition for partition of the parties' community property, seeking to have the court set a time limit for Johnston to file a detailed descriptive list or a traversal of her list. Subsequently, Johnston filed a detailed descriptive list. Etter filed a detailed descriptive list and traversal on May 5, 2003, noting her claim for reimbursement in the amount of $2,800. On August 12, 2003, the parties were ordered to update their detailed descriptive lists and claims for reimbursement by November 1, 2003. After the December 8, 2003 trial date was continued at Etter's request, the court ordered the parties to file any amendments to their pleadings, descriptive lists, and lists of exhibits and witnesses no later than April 15, 2005, indicating that the failure to list any witness or exhibit would preclude their use at trial unless extreme good cause was shown. In compliance with this order, Etter filed a list of witnesses and exhibits and amended her detailed descriptive list to set forth a claim for reimbursement for the use of her separate funds to pay 11 different debts.
Following a trial at which Johnston was unrepresented, the trial court ordered reimbursement to Etter for the use of her separate funds to pay community debts or Johnston's separate debts in the amounts of $15,911.50 for Johnston's legal expenses and costs, $6,400 for the down payment on a mobile home, and $1,325 for a Studebaker truck.
After engaging counsel, Johnston filed a motion for a new trial. Etter opposed the motion on the ground that Johnston had failed to comply with previous court orders. Her opposition was further based on his failure to offer compelling evidence to establish the mortgage indebtedness on the property, the amount of the reduction on the mortgage indebtedness that may have occurred, payments made on the mortgage indebtedness, and any documentation to substantiate payments of the mortgage indebtedness. The motion was granted in part to allow only reargument of the issues of rental reimbursement and mortgage reimbursement. Following the hearing on this motion, the trial court maintained its original judgment.
Johnston appealed, contending the trial court erred in (1) disallowing reimbursement to him for the mortgage payments, (2) allowing rental reimbursement to Etter in the absence of a court order or a prayer for same,[1] (3) failing to limit Etter's reimbursement to one-half of $15,000 for use of her separate funds for payment of legal expenses for his defense in second-degree murder proceedings, which he submits was a community debt, (4) allowing full reimbursement for a $6,400 down payment on the mobile home and a $1,325 payment for a Studebaker truck, which he submits were paid with community funds from a joint checking account, and (5) allowing full reimbursement for $911.50 paid to the East Baton Rouge Parish Sheriffs Office in connection with his criminal charges, which he submits was paid with community funds from a joint checking account.

Reimbursement for Mortgage Payments
Johnston challenges the trial court's denial of his right to reimbursement for amounts paid by him since 1998 towards the mortgage note on the marital domicile. After recognizing that a former spouse who occupied the marital domicile is not liable to the other spouse for the rental value unless there is an agreement between the parties or a court order, the trial court reviewed the procedural history of the case. In his sworn detailed descriptive list filed while represented by counsel, Johnston simply listed the house note in the amount of $550 as a community debt/liability. Subsequently, the trial court afforded both parties ample opportunity to file a complete detailed descriptive list, amended pleadings, an exhibit list, and a witness list. Johnston did not comply. Thus, Johnston never made a formal request for reimbursement of mortgage payments. In light of these facts, Etter objected to the introduction of evidence by Johnston on this issue at the outset of trial and again when Johnston attempted to introduce written documents purportedly from the mortgage lender. Because Johnston was unrepresented, the trial court allowed introduction of the evidence. In its reasons for judgment on the motion for a new trial, the trial court remarked that it erred in allowing Johnston to introduce such evidence because he had ignored prior court orders. In the interest of completeness, the trial court found that the written documentation offered by Johnston was insufficient to satisfy his burden of proving a claim for reimbursement in that the documentation was incomplete and had neither been authenticated nor identified with any mortgage lender.
After a thorough review of the record, we are unable to find that the trial court manifestly or legally erred in finding that Johnston failed to satisfy his burden of proof on this issue.

Characterization of Settlement Proceeds
In his brief, Johnston urged that the money that had been used to pay certain debts came directly from proceeds from Etter's workers' compensation settlement, which represented medical expenses and lost wages and would have been a community asset. Initially, we note that the receipt and release reveals that the accident in question occurred on November 5, 1988, which was before the parties were married. Furthermore, nothing in the record supports Johnston's assertion that the settlement involved a claim for workers' compensation against Etter's employer for a work-related accident. The documentation supports a finding that the settlement involved a claim for personal injury filed by Etter in district court against Casey Construction Management Corporation, Welch Door Service, and Atlas Door Corporation, concerning injuries she sustained when the rolling grill door at the entrance to the LensCrafters store in Cortana Mall suddenly recoiled. Accordingly, the trial court did not manifestly or legally err in finding that the settlement proceeds were Etter's separate property. See LSA-C.C. art. 2344.
A check in the amount of $48,753.97 was deposited in a savings account opened by Etter at First National Bank of Denham Springs on August 11, 1995. Because Etter placed portions of her separate funds from her personal savings and/or checking accounts into the parties' joint checking account, Johnston urges that the money lost its characterization as separate property via commingling.
The mere mixing of separate funds and community funds in a joint bank account does not in and of itself convert the entire account into community property; only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all of the funds characterized as community funds. Curtis v. Curtis, 403 So.2d 56, 59 (La. 1981). Thus, once the spouse allows separate funds to be commingled with community funds, the spouse must be able to show the separate nature of the funds used by tracing the use of the separate funds with sufficient certainty. See Talbot v. Talbot, 03-0814 (La. 12/12/03), 864 So.2d 590, 603.
Therefore, if Etter is able to trace the withdrawals and deposits with sufficient certainty, she is entitled to reimbursement for the use of her separate funds to pay community obligations, but only for one-half of the amount or value of the funds at the time they were used to satisfy a community obligation. See LSA-C.C. art. 2365. Otherwise, if commingling occurred, she is not entitled to any reimbursement for money that was used to pay a community obligation.

Legal Expenses
It is undisputed that $15,000 of Etter's settlement proceeds were used on August 14, 1995, to pay legal fees for legal representation of Johnston in connection with a second-degree murder charge. Generally, obligations incurred during the community property regime are presumed to be community obligations. LSA-C.C. art. 2361. As an exception, obligations entered into during the legal regime but coming within the few specific categories enumerated in LSA-C.C. art. 2363 are classified as separate obligations, as, for example, those resulting from an intentional wrong not perpetrated for the benefit of the community. Thus, once it has been shown that an obligation arose during the community's existence, the presumption of Article 2361 may be rebutted only through the presentation of facts proving the obligation to be a separate obligation as defined under LSA-C.C. art. 2363. Sims v. Sims, 28,470 (La. App. 2nd Cir. 6/26/96), 677 So.2d 663, 665. Thus, we must determine if Etter offered sufficient proof to rebut the presumption of a community obligation as to these legal expenses.
Besides the cancelled check and Etter's testimony that these legal fees were in fact paid in connection with an attempted second-degree murder charge against Johnston, the record is devoid of any information concerning the facts surrounding the circumstances of the alleged crime, the related charge, or the criminal proceeding. Neither Etter nor Johnston was questioned about the alleged offense. Thus, the record is completely devoid of any evidence rebutting the presumption that the obligation to pay the defense-related fees resulted in a community obligation. Absent proof by Etter that the "intentional wrong" committed by Johnston was not for the benefit of the community, the trial court erred in apparently classifying the attorney fee obligation as Johnston's separate obligation.[2] See LSA-C.C. art. 2363. Accordingly, the trial court legally erred in awarding Etter reimbursement for the full amount of the legal expenses paid with her separate funds.

Reimbursement Claims Related to Payments Made From Their Joint Checking Account
The mobile home and the Studebaker truck were community assets, as they were both purchased during the marriage. See LSA-C.C. art. 2338. If Etter used her separate funds to acquire community property, she has a claim for reimbursement for the use of her separate funds pursuant to LSA-C.C. art. 2367. See Smith v. Smith, 95-0913 0913 (La. App. 1st Cir. 12/20/96), 685 So.2d 649, 652. By virtue of LSA-C.C. art. 2367, the right would only extend to one-half of the amount expended. See Smith, 685 So.2d at 653 n.4.
The resolution of Etter's claim for reimbursement regarding the payment of $6,400 for the down payment on the mobile home, $1,325 for a Studebaker truck, and $911.50 to the East Baton Rouge Parish Sheriffs Office depends on the classification of the funds used in making these payments. Because the payments were made with checks drawn on the parties' joint checking account, Johnston urges that these payments were made with community assets for community obligations and Etter is not entitled to any reimbursement.
Under LSA-C.C. art. 2365, the party demanding reimbursement must show that separate funds have been used to satisfy the community obligation. See Kaplan v. Kaplan, 522 So.2d 1344, 1347 (La. App. 2nd Cir. 1988). In an effort to show that she used her separate funds to pay these three obligations, Etter testified that the down payment on their mobile home was made with two checks from their joint checking account, a $2,000 check dated September 14, 1996, and a $4,400 check dated November 1, 1996. She explained that the expenditure of these funds is traceable to her personal savings account. According to Etter, she withdrew $2,100 on September 16, 1996, and $4,400 on October 28, 1996, from her savings account. Furthermore, Etter stated that on or about October 18, 1995, they bought the 1962 Studebaker truck for $1,325 from Gerald Clauatre. According to Etter, this money formed part of the $2,000 that was withdrawn from her personal savings account on October 16, 1995. Although Johnston denied that the truck purchase was from Clauatre, a notation on the check supports Etter's testimony that the October 18, 1995 check pertained to the truck. With respect to the $911.50 that was paid to the sheriffs office on November 17, 1995, with a check drawn on their community checking account, Etter testified that these funds came from the withdrawal that was made from her personal savings account that same day in the amount of $1,500. Although there was no documentation from the bank concerning the withdrawals from her savings account and the deposits into their joint checking account to corroborate her testimony, Etter introduced a copy of her handwritten savings account ledger to substantiate the four withdrawals in question.
Obviously, the trial court believed that Etter had traced with sufficient certainty the use of her separate funds in making each of these payments so as to establish her claims for reimbursement. Considering the credibility determination made by the trial court, we are unable to conclude that the trial court manifestly erred in refusing to find that Etter's placement of these funds into the parties' joint checking account constituted indiscriminate commingling of her separate funds with their community funds.
Having shown that her separate funds were used in paying three different community obligations, Etter is entitled to reimbursement under LSA-C.C. alt. 2365, but only for one-half of the amount or value that the property had at the time it was used to satisfy a community obligation. Therefore, the trial court legally erred in awarding Etter reimbursement in the full amount of these payments.

Decree
For the foregoing reasons, the judgment of the trial court is amended to reduce Maria Denise Etter's reimbursement award[3] by one-half, $11,818.25 for reimbursement in her favor. As amended, the judgment is affirmed. Costs of this appeal are assessed equally to the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Since the judgments in this case did not make such an award, we find that this assignment of error lacks merit.
[2] Likewise, the classification of the payment of $911.50 to the East Baton Rouge Parish Sheriffs Office in connection with this criminal charge lacks sufficient proof to overcome the presumption that it was not for the benefit of the community.
[3] The trial court's judgment awarded Etter total reimbursement in the amount of $23,636.50, representing claims for $15,911.50 (attorney fees and costs), $6,400 (down payment on the mobile home), and $1,325 (truck).